2013 COA 85

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Dennis Floyd FOSTER, Defendant–Appellant.**

**No. 10CA2445**

Colorado Court of Appeals, Div. IV.

Announced June 6, 2013

Rehearing Denied July 18, 2013

Douglas County District Court No. 09CR661; Honorable Paul A. King, Judge.

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Kimberly K. Caster, Littleton, Colorado, for Defendant–Appellant

Opinion by JUDGE WEBB

¶ 1 Defendant, Dennis Floyd Foster, appeals the judgment entered on a jury verdict finding him guilty of one count for failure to register as a sex offender under section 18–3–412.5(1)(a), C.R.S.2012. He also appeals the proportionality of the twelve-year sentence imposed under the habitual criminal statute, section 18–1.3–801(2)(a), C.R.S.2012. We affirm both the judgment and the sentence.

## I. Background

¶ 2 While on parole as a registered sex offender, defendant told the Department of Corrections (DOC) "that he had changed his residence" and provided DOC with the address of his new "home" for purposes of parole. That same day, defendant's parole officer went to the new address to ensure that it complied with the terms of his parole. After meeting defendant there and "verify[ing] that all his clothing and belongings" seemed to be at the new address, the officer approved the residence.

¶ 3 Between two and three weeks later, a detective performed a compliance check at defendant's old address, which was the last address where he had registered as a sex offender under section 16–22–105(3), C.R.S. 2012. Defendant was not there. The detective spoke to defendant's nieces, who provided conflicting information about where defendant was living. That same day, defendant telephoned the detective and went to the police station, where he was arrested for failure to "register in all jurisdictions in which he ... establishe[d] a residence." *Id.*

¶ 4 The parties stipulated that defendant "was required to register as a sex offender." The prosecution introduced testimony from defendant's parole officer regarding his conversation with defendant and his inspection

of defendant's new address, as well as a recording of defendant's phone call with the detective. The prosecution also offered testimony that defendant had previously failed to register as a sex offender and was told by police that he needed to report each residence at which he resided. However, the jury did not hear evidence of defendant's prior guilty plea to this offense, in part because the parties asked the court to make this finding in the habitual criminal phase.

¶ 5 The jury found defendant guilty of having failed to register as a sex offender at the new address. The court held a habitual criminal trial and found that defendant previously had been convicted of failing to register, which elevated his conviction to a class five felony. § 18–3–412.5(2)(a). The court also found that defendant had previously been convicted of two other felonies: aggravated incest and possession of a schedule IV controlled substance with intent to distribute.

¶ 6 Based on these felonies, the court sentenced defendant to twelve years imprisonment under the habitual criminal statute. He requested a proportionality review of this sentence. The court concluded that the sentence was not so "grossly disproportionate" as to require an extended proportionality review, and determined the sentence was "appropriate."

## II. Admissibility of Defendant's Previous Failure to Register

 ¶ 7 Defendant first contends the trial court erred by admitting under CRE 404(b) evidence of his previous failure to register as a sex offender. Because this evidence was relevant independent of any inference about defendant's character and was not unfairly prejudicial, the trial court did not abuse its discretion.

### A. Standard of Review

 ¶ 8 A trial court may admit CRE 404(b) evidence in its discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009). This discretion will be disturbed only if the court's ruling was manifestly arbitrary, unreasonable, unfair, or misapplied the law. *People v. Casias*, 2012 COA 117, ¶ 29, 312 P.3d 208.

### B. Law

¶ 9 Admitting evidence of other crimes exposes a defendant to the risk of being convicted based on bad character. *People v. Garner*, 806 P.2d 366, 369 (Colo.1991). To reduce this risk, CRE 404(b) restricts the admissibility of "evidence of other crimes, wrongs or acts" to circumstances where:

1. The evidence relates to a material fact;

2. It is "logically relevant ... [by tending] to make the existence of [the material fact] more probable or less probable";

3. "[T]he logical relevance is independent of the intermediate inference ... that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character"; and

4. Any prejudicial impact does not "substantially outweigh[ ]" its probative value.

*People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

### C. Facts

¶ 10 Before trial, the prosecution moved to admit evidence of defendant's prior conviction for failure to register as a sex offender ("first offense"). Defendant objected. At the hearing, the prosecution urged admission to show defendant's knowledge of the reporting requirements and to negate mistake. The trial court concluded that evidence of defendant's plea and conviction was inadmissible under CRE 404(b), but permitted the prosecution to introduce evidence of the facts underlying this conviction. It reasoned that these facts were relevant to show defendant's knowledge of the "nuances of the registration law," and that because knowledge was an element of the offense, the probative value of the evidence substantially outweighed any unfair prejudice.

### D. Analysis

#### 1. Material Fact

 ¶ 11 The first prong of the *Spoto* test "considers not the substance of the prior

act evidence, but the fact in the case for which the evidence is offered to prove." *Yusem*, 210 P.3d at 464. If evidence relates to an element of the charged offense, it satisfies this part of the test. *Id.* The mental state of "knowingly" is an element of failure to register as a sex offender. *People v. Lopez*, 140 P.3d 106, 110 (Colo.App.2005).

¶ 12 Here, defendant's knowledge of the registration requirements relates to whether he knowingly failed to register as a sex offender "in all jurisdictions in which he ... establishe[d] a residence." § 16–22–105(3); *see People v. Rath*, 44 P.3d 1033, 1040 (Colo. 2002) (concluding that the first prong of *Spoto* is satisfied when facts are "closely related to" and "well-accepted methods of proving" elements of the offense, while not elements of the offense themselves). Thus, the first prong of *Spoto* is satisfied.

### 2. Logical Relevance

¶ 13 "To satisfy the second prong of the *Spoto* analysis, the offering party need only show logical relevance—that the prior act evidence has *any* tendency to make the existence of the material fact more or less probable than without the evidence." *Yusem*, 210 P.3d at 464–65 (emphasis in original).

¶ 14 Here, the prior act evidence indicated that, before defendant's conviction for the first offense, a police officer had told him that he needed to register wherever he resided, even if he maintained multiple residences. Because both cases involved registration at multiple residences, the officer's warning would make it more probable that he knew his obligation to register here. Thus, the evidence is logically relevant.

### 3. Inference Independent of Bad Character

¶ 15 The relevance of prior act evidence must not depend on the inference that the defendant committed the crime charged because he acted in conformity with his demonstrated bad character. *Spoto*, 795 P.2d at 1318. "However, almost by definition, [prior acts] evidence will suggest bad character and action in conformity therewith." *People v. Snyder*, 874 P.2d 1076, 1080 (Colo.1994). Hence, *Spoto*'s third prong does not require

"the absence of the [prohibited] inference but merely ... that the proffered evidence [is] logically relevant independent of that inference." *Id.*; *see Rath*, 44 P.3d at 1041 (finding prior act evidence admissible because the "chain of logical inferences" did not rely on the "inference that he must have committed a sexual assault in this case because he is a person of criminal character").

¶ 16 Here, independent of propensity, the evidence supports the inference that defendant knowingly violated section 16–22–105(3) when he failed to register at his new address. *See supra* Part II.D.1–2. This inference arises because the evidence explains how defendant learned of the reporting requirements concerning multiple residences, which some defendants may not know. Since evidence of prior acts is "admissible for other purposes, such as proof of ... knowledge," CRE 404(b), the evidence satisfies the third prong of *Spoto*.

### 4. Probative Value Not Substantially Outweighed by Unfair Prejudice

¶ 17 The final prong of *Spoto*, which applies CRE 403, assesses the value that the evidence in question adds to the prosecution's case, affording it the maximum probative value and the minimum unfair prejudice under the circumstances. *Yusem*, 210 P.3d at 467. Prejudice is not unfair if it "results from the legitimate probative force of the evidence." *Rath*, 44 P.3d at 1043.

¶ 18 Here, the evidence was highly probative. The prosecution bore the burden of proving each element of the crime beyond a reasonable doubt, *People v. McKnight*, 200 Colo. 486, 498, 617 P.2d 1178, 1187 (1980), including defendant's knowledge. *See Lopez*, 140 P.3d at 110 (holding that the mental state of "knowingly" is an element of failing to register as a sex offender under § 18–3–412.5). And because "[d]irect proof of knowledge ... is seldom obtainable," *Goodfellow v. People*, 75 Colo. 243, 245, 224 P. 1051, 1052 (1924), evidence of prior acts is often the best, if not the only, proof of a defendant's knowledge. *See, e.g., People v. Romero*, 197 P.3d 302, 307–09 (Colo.App.2008) (concluding that evidence of a defendant's prior acts of

leaving jail for work release was admissible under CRE 404(b) to rebut the defendant's claim that "he didn't knowingly escape," but rather misunderstood the procedures for leaving jail).

¶ 19 Nevertheless, defendant argues that the prosecution's evidence lacked probative value because he "stipulated that [he] was required to register as a sex offender," which purportedly removed his knowledge as an issue in this case. This argument fails because defendant's acknowledging his *duty* to register is not the same as conceding that he *knowingly failed* to register. As defense counsel indicated by suggesting in closing argument that defendant would not have failed to register "if that's what he really knew that he was supposed to do," defendant did not stipulate that he had knowingly failed to register.

¶ 20 In contrast to this high probative value of the evidence, any unfair prejudice because the jury was told that he had previously offended was minimal. The jury had to consider defendant's knowledge of the registration requirements. *See supra* Part II. D.1–2. Thus, any prejudice suffered to defendant's case on this basis was not unfair. *See People v. Dist. Court*, 785 P.2d 141, 147 (Colo.1990) ("Proffered evidence which calls for exclusion as unfairly prejudicial is given a more specialized meaning of an undue tendency to suggest a decision on an improper basis...."). And to the extent that additional and unrelated prejudicial inferences could arise, the court gave a limiting instruction, requiring the jury to consider the evidence only to demonstrate "knowledge and to prove the absence of an accident or a misunderstanding of the law." *See People v. Gibbens*, 905 P.2d 604, 608 (Colo.1995) ("[T]he trial court acted within the bounds of its discretion [under CRE 403] when it determined that any potential prejudice could be sufficiently mitigated by the limiting instruction provided to the jury.").

¶ 21 Thus, because any unfair prejudice suggested by the prosecution's prior act evidence did not "substantially outweigh[ ]" its high probative value, the evidence satisfied the fourth *Spoto* prong.

¶ 22 Accordingly, the trial court did not abuse its discretion by admitting this evidence.

### III. Prior Conviction Enhancer

¶ 23 Defendant next contends the trial court erred in deciding that the prior offense sentence enhancer had been proven, rather than submitting a special interrogatory on this issue to the jury. The Attorney General responds that the invited error doctrine precludes review, and we agree.

### A. Standard of Review

¶ 24 The standard of review for invited error has not been addressed by Colorado appellate courts, probably because invited error arises for the first time on appeal. The related doctrine of waiver in criminal cases presents "a mixed question of fact and law that we review de novo." *People v. Alengi*, 148 P.3d 154, 159 (Colo.2006) (right to counsel). Here, because applying invited error depends solely on undisputed statements of defense counsel to the trial court, we take up the issue de novo. *See Daniel v. City of Colorado Springs*, 2012 COA 1772, ¶ 11, 328 P.3d 234 (*cert. granted* Apr. 29, 2013) (where disputed factual issues need not be resolved, waiver of governmental immunity is reviewed de novo).

### B. Law

¶ 25 "The doctrine of invited error captures the principle that 'a party may not complain on appeal of an error that he has invited or injected into the case; he must abide by the consequences of his acts.'" *Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002) (quoting *People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989)). This doctrine "is a cardinal rule of appellate review applied to a wide range of conduct. It ... prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." *Id.* (quoting *Roberts v. Consolidation Coal Co.*, 208 W.Va. 218, 228, 539 S.E.2d 478, 488 (2000)). It "is employed to protect the principles supporting the goals of judicial economy and integrity by allocating responsibility to the party that induced the error by a request that the court

take a particular action or by acquiescence in conduct of the court or the opposing party." *People ex rel. M.S.*, 129 P.3d 1086, 1087 (Colo.App.2005).

¶ 26 Invited error most often arises in holding a defendant responsible for tendering or agreeing to a jury instruction later challenged on appeal. *See, e.g., Zapata*, 779 P.2d at 1307–10. However, it also has been applied in other contexts. *See Townsendv.People*, 252 P.3d 1108, 1112 n. 2 (Colo.2011) (concession of fact); *People v. Wittrein*, 221 P.3d 1076, 1082 (Colo.2009) (crossexamining on particular topic, although the response was impermissible); *People v. Shackelford*, 182 Colo. 48, 50, 511 P.2d 19, 20 (1973) (asking open-ended questions on cross-examination).

¶ 27 Yet, several divisions of this court have declined to apply invited error when the record does not show that defense counsel acted "as a matter of trial strategy." *People v. Arzabala*, 2012 COA 99, ¶ 44, 317 P.3d 1196; *accord People v. Bachofer*, 192 P.3d 454, 463 (Colo.App.2008); *People v. O'Connell*, 134 P.3d 460, 463 (Colo.App.2005); *People v. Hodges*, 134 P.3d 419, 427 (Colo.App. 2005), *aff'd*, 158 P.3d 922 (Colo.2007). These divisions reviewed for plain error. Crim. P. 52(b). They rely on statements of our supreme court that the invited error doctrine "is narrow and applies to errors in trial strategy but not errors that result from oversight." *Wittrein*, 221 P.3d at 1082. This strategic overlay first appeared in *People v. Stewart*, 55 P.3d 107, 119 (Colo.2002):

> Where it appears that an error or omission in jury instructions is due to inadvertence or attorney incompetence, the reviewing court should apply the doctrine of plain error. Where, however, the omission is strategic, the invited error doctrine should be invoked.

¶ 28 Our supreme court applied invited error most recently in *People v. Gross*, 2012 CO 60, ¶ 2, 287 P.3d 105, to hold that the doctrine "precludes plain error review of a defense-tendered instruction." In so holding, the court rejected the defendant's argument that "the attorney incompetence exception to the invited error doctrine permits his appeal of a jury instruction requested by his own counsel." *Id.* at ¶ 7. It declined defendant's invitation to apply *Stewart*, explaining that the error in that case had "resulted from counsel's oversight." *Id.* at ¶ 9. It added that if *Stewart* extended to "deliberate" acts of defense counsel:

> then trial courts would be required to evaluate the propriety of counsel's trial strategy to determine whether to give a requested instruction. Such a result would be an untenable burden because assessing counsel's strategy does not fall within the purview of the trial court. Instead, where counsel's trial strategy is arguably incompetent, it should be challenged on grounds of ineffective assistance of counsel under Crim. P. 35(c).

*Id.* at ¶ 11. No division of this court has addressed *Gross* in a published opinion.

### C. Facts

¶ 29 At the motions hearing discussed in Part II. C, *supra*, the parties and the court discussed how to handle defendant's prior conviction for failure to register as a sex offender, given the court's CRE 404(b) ruling. On the first day of trial, the following colloquy occurred:

> Court: And it looks like a portion of that count talks about the act being committed subsequent to a prior conviction. Am I to read that to the jury? I guess I need to have clarification from counsel with respect to that.
>
> Prosecutor: Your Honor, I did speak to [defense counsel] about that. It's both of our belief [sic] that that is an issue that goes to the [c]ourt, not to the jury.
>
> . . . .
>
> Defense counsel: We agree, [Y]our Honor.

Based on this exchange, the court observed, "I believe that the parties have agreed that this is a sentence enhancement to be determined by the [c]ourt," and then read the charge to the prospective jurors without mentioning the prior offense.

¶ 30 Following jury selection, defense counsel made a further record by acknowledging that defendant was stipulating "there was a felony before that requires him to

register." Yet, counsel continued that defendant was:

> still asking the Court to make the determination as to whether or not there was a prior failure to register, which makes this a Class 5 felony. I believe the evidence will show that, but we would still ask the Court to make that finding.

The prosecutor agreed. During trial, the prosecutor did not present evidence of a prior conviction for failure to register. And the prior conviction was not addressed in either the elemental instruction or a special interrogatory.

¶ 31 At the habitual criminal trial, the court observed that it had to "determine in Count 1 if the defendant suffered a prior conviction for failure to register, as that could potentially serve as an aggravator." After reviewing evidence of the prior conviction, the court concluded that the prosecutor had proven, beyond a reasonable doubt, that defendant "suffered the felony conviction in Jefferson County for failure to register as alleged in Count 1."

### D. Application

¶ 32 Defendant's assertion that he preserved the issue of a jury determination on the second offense enhancer is unpersuasive. He relies on some pretrial statements of the court and the parties that conflate the aggravated incest conviction, which obligated defendant to register, with his later conviction for having failed to register, which would enhance the charged offense to a class 5 felony. However, defense counsel's only unequivocal statements to the court on the enhancer were on the morning of trial, as set forth above. Defense counsel's final statement, in which the prosecutor expressly concurred, leaves no reasoned doubt that counsel chose to have the court, not the jury, decide the enhancer.

¶ 33 Because defendant did not preserve the issue, only plain error review is available. *See People v. Chavez*, 2012 COA 61, ¶ 13, 318 P.3d 22 ("This issue was not preserved; therefore, plain error analysis applies."). However, the Attorney General asserts that because defendant invited error, if any, we should not undertake plain error review.

*See Gross,* ¶ 8 (noting that the purpose of invited error is to "preclude[ ] appellate review of errors created by a party"). Defendant's reply brief does not specifically address the invited error assertion, nor does it request plain error review. Because plain error review was not requested, we may decline to do so sua sponte. *United States v. Janus Industries,* 48 F.3d 1548, 1559 (10th Cir.1995).

¶ 34 Nevertheless, we consider in the interest of judicial economy whether error invited by affirmative conduct of a defendant precludes plain error review. *See People v. Houser,* 2013 COA 11, ¶ 35, 337 P.3d 1238 (concluding that the court may address an unpreserved challenge "as a matter of discretion" in order to "further judicial economy"). Because *Gross* limits *Stewart,* as explained below, we conclude that it does.

¶ 35 *Gross,* ¶ 9, emphasizes that the error in *Stewart* "resulted from counsel's oversight," and courts may review "inadvertent errors or omissions" for plain error. Following this reasoning, the *Gross* court reviewed the trial court's failure to give a self-defense instruction for plain error, as defense counsel did not request such an instruction. *Id.* at ¶¶ 16–17. But, the court declined to review a defense-tendered initial aggressor instruction because "defense counsel argued affirmatively for the ... instruction despite opposition by the prosecution." *Id.* at ¶ 11.

¶ 36 Contrasting these holdings, we read *Gross* to distinguish errors based on trial counsel's omission from those of commission in limiting appellate review. While appellate courts may review the former for plain error, the latter generally will be unreviewable.

¶ 37 The doctrine of waiver supports this reading of *Gross.* Here, although the Attorney General argues only invited error, "[i]nvited error is akin to waived error." *People v. Greer,* 262 P.3d 920, 937 n.7(Colo.App.2011); *see People v. Verbrugge,* 998 P.2d 43, 45 (Colo.App.1999) (treating "implied waiver" as synonymous with "invited error"). A waiver occurs when a defendant specifically removes a claim from consideration. *People v. Rodriguez,* 209 P.3d 1151, 1160 (Colo.App.2008) (citing *United*

*States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)), *aff'd,* 238 P.3d 1283 (Colo.2010); *see also People v. Stackhouse,* 2012 COA 202, ¶¶ 36–37, —— P.3d ——, 2012 WL 5871029 (Gabriel, J., specially concurring) (noting that recent decisions, including *Olano,* 507 U.S. at 733, 113 S.Ct. 1770, distinguish the "failure to make the timely assertion of a right," which is reviewable for plain error, from the "intentional relinquishment or abandonment of a known right," which is unreviewable).

¶ 38 Whether viewed as waiver or invited error, this distinction between reviewable omission and unreviewable commission highlights the difficulty of testing the latter for attorney incompetence. Imposing on a trial court the "untenable burden" of "assessing counsel's strategy[, which] does not fall within the purview of the trial court." *Gross,* ¶ 11. Such assessment would involve several imponderables, including:

- How should the court decide when to inquire into possible inadvertence, rather than taking defense counsel at his or her word? *Cf. People v. Gladney,* 194 Colo. 68, 71–72, 570 P.2d 231, 233 (1977) (observing that defense counsel often chooses not to request a limiting instruction for strategic or tactical reasons, and therefore holding that a trial court's failure to give such an instruction on its own motion is not reversible error).
- If the court so inquires and defense counsel responds only that the strategic implications had been considered, need the court inquire further to preclude the attorney incompetence exception from being raised on direct appeal? *Cf. People v. Chavez,* 2012 COA 61, ¶ 51, 318 P.3d 22 (examining a trial court ruling that preceded defendant's cross-examination before concluding that the "decision was presumably trial strategy, not oversight").
- Even if eliciting only such an affirmative answer sufficiently preserves invited er-

ror, could that limited colloquy favor the prosecution, which now has a reason to reconsider the strategic implications and, perhaps as a result, act differently? *Cf. People v. Ullery,* 984 P.2d 586, 590 (Colo. 1999) (interpreting statute to avoid "forcing defense counsel to reveal her thoughts, opinions and strategies of the case").

- Finally, would such a dialogue with defense counsel, albeit outside the jury's presence, erode the appearance of impartiality in the eyes of spectators such as victims or their families? *Cf. People ex rel. A.G.,* 262 P.3d 646, 652 (Colo.2011) (recognizing "the importance of disqualifying a judge whose impartiality might reasonably be questioned"); *Nordloh v. Packard,* 45 Colo. 515, 521, 101 P. 787, 790 (1909) (stating that the impartial administration of justice is necessary "to retain public respect and secure willing and ready obedience to [courts'] judgments").

¶ 39 Probing the attorney incompetence exception when defense counsel has acted affirmatively similarly burdens appellate courts. Those courts must intuit the strategic basis for counsel's action, if any. *Cf. People v. Rector,* 248 P.3d 1196, 1201 (Colo. 2011) ("A trial court cannot be expected to intuit the challenge brought by the parties."). However, appellate analysis of counsel's strategic reason for affirmative conduct often will be imprecise, at best. *Cf. People v. Kelling,* 151 P.3d 650, 655 (Colo.App.2006) ("[B]ecause of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal.").

¶ 40 For these reasons, we conclude that, under *Gross,* where defense counsel has acted affirmatively, the invited error doctrine is not subject to the attorney incompetence exception recognized in *Stewart.*[1] Accordingly, we further conclude that because of defense

---

1. In so concluding, we are mindful that *Stewart,* 55 P.3d at 119, cited with approval from the special concurrence in *Zapata,* 779 P.2d at 1311, which recognized that "although invited error in most cases will result from defense counsel's inadvertence or negligence, it is the defendant

who must bear the stigma of a conviction and the burden of prison time." However, as *Gross,* ¶ 11, points out, trial counsel's incompetence "should be challenged on grounds of ineffective assistance of counsel under Crim. P. 35(c)," which would remove that stigma if successful.

counsel's affirmative conduct, invited error precludes review of the trial court's decision not to submit the prior conviction aggravator to the jury.

## IV. Sufficiency of the Evidence

¶ 41 Defendant next contends record evidence was insufficient to support the conclusion that he "establishe[d] a residence" at his new address, which is required before a jury can find a violation of section 16–22–105(3). While defendant introduced evidence to the contrary, the record contains sufficient evidence to support the jury's verdict.

### A. Standard of Review

¶ 42 The sufficiency of evidence is reviewed de novo. *People v. Robb,* 215 P.3d 1253, 1257 (Colo.App.2009).

### B. Law

¶ 43 "The sufficiency of the evidence test is constitutionally mandated to ensure that the prosecution proves every element of an offense beyond a reasonable doubt." *People v. LaRosa,* 2013 CO 2, ¶ 34, 293 P.3d 567. Under this test, the court must ensure that "a reasonable mind could conclude that each material element of the offense was proven beyond a reasonable doubt." *Id.* at ¶ 35 (internal quotations omitted). But only the jury may weigh evidence, resolve conflicting testimony, and assess witness credibility. *People v. Rivas,* 197 Colo. 131, 136, 591 P.2d 83, 86 (1979). For this reason, the appellate court must construe the evidence in the light most supportive of the jury's verdict. *People v. Bueno,* 188 Colo. 396, 398–99, 534 P.2d 1196, 1198 (1975).

### C. Discussion

¶ 44 "A person establishes a residence through an intent to make any place or dwelling his or her residence." § 16–22–105(3). A division of this court has held that a person must also be physically present at a location before it can be established as a residence under the statute. *People v. Griffin,* —— P.3d ——, ——, 2011 WL 915714 (Colo.App. No. 08CA2694, Mar. 17, 2011) (*cert. granted in part* Oct. 11, 2011) ("Whether physical presence or occupancy is required to establish a residence under the Colorado Sex Offender Registration Act[; w]hether the court of appeals erred in finding that the evidence was insufficient to sustain the defendant's conviction for the continuing offense of failure to register as a sex offender.").

#### 1. Intent

¶ 45 A defendant's intent "is usually discerned from the circumstances surrounding the occurrence [of a crime]." *Baker v. People,* 176 Colo. 99, 102, 489 P.2d 196, 197 (1971). Thus, "defendant's actions and the reasonable inferences which may be drawn from the circumstances of the case" may provide sufficient support to affirm a jury's finding of intent. *Id.*

¶ 46 According to defendant's parole officer, defendant told DOC more than two weeks before his arrest "that he had changed his residence" and provided DOC with his new address, which he referred to as his "home." The parole officer further testified that, when he visited defendant at the new address that same day, defendant said that the new residence "was going to be his permanent residence; that's the only place he was going to be living."

¶ 47 From this testimony, a jury could infer that defendant intended to reside at the new address at least two weeks before he was arrested. When viewed in the light most favorable to the jury's verdict, defendant's use of the word "home" implies acceptance of the new address as his residence. And defendant's telling DOC of his new address supports this inference.

¶ 48 The inference arises from the facts described by the parole officer, regardless of why defendant was communicating with DOC. *See Garcia v. People,* 121 Colo. 130, 135–36, 213 P.2d 387, 390 (1949) ("The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference"). Hence, defendant's assertion that a parolee's reporting obligation to DOC differs from the sex offender registration requirements does not preclude this inference.

¶ 49 Defendant's argument against this inference, because section 16–22–105(3) requires the prosecution to prove its case through specific types of evidence specified in the statute, is unpersuasive. While the statute lists specific evidence that "may prove intent," such as a lease or utility bills, it also allows the prosecution to prove intent with "any other action demonstrating such intent." § 16–22–105(3). Thus, the statute does not limit the principle that "[t]he prosecution is generally permitted to prove its case with the evidence it believes most probative." *People v. Scarlett*, 985 P.2d 36, 42 (Colo.App.1998).

¶ 50 Therefore, although defendant introduced evidence to the contrary, a reasonable jury could have concluded that defendant intended to establish the new address his residence more than two weeks before his arrest.

### 2. Presence

¶ 51 Defendant also contends that the evidence was insufficient to "show that [he] had a 'physical presence' at the [new] address beyond staying there a few nights." But the statute only require some physical presence at the property in which the defendant intends to reside, see *Griffin*, —— P.3d at —— (holding that evidence was insufficient to convict when it "d[id] not support a finding, beyond a reasonable doubt, that Griffin ever lived in th[e] house" (emphasis added)), which defendant does not dispute. In addition, the parole officer testified that, when he visited defendant at the new address more than two weeks before his arrest, "all [of] his clothing and belongings were there." Considering that defendant's niece also testified he last "stayed" at the old address two weeks before his arrest, sufficient evidence supports the inference that defendant was present at the new address for a period of time.

¶ 52 Accordingly, because the record contains evidence supporting the jury's findings that defendant both intended to establish a residence and was present at that residence, we may not disturb the jury's verdict for lack of evidence.

## V. Proportionality of Defendant's Habitual Criminal Sentence

¶ 53 Defendant challenges his twelve-year habitual criminal sentence as "grossly disproportionate" under the Eighth Amendment, alleging that none of his prior felonies is grave and serious. While defendant's triggering offense was not grave and serious under the circumstances, we conclude that the felonies underlying the sentence collectively were grave and serious. Therefore, because defendant's sentence did not raise an inference of gross disproportionality, we affirm the sentence.

### A. Standard of Review

¶ 54 The proportionality of a sentence is reviewed de novo. *People v. Strock*, 252 P.3d 1148, 1157 (Colo.App.2010). When the proportionality of a sentence is challenged on appeal, the appellate court conducts its own abbreviated proportionality review and remands only when an extended proportionality review is required. *People v. Cooper*, 205 P.3d 475, 480 (Colo.App.2008).

### B. Law

¶ 55 "[N]o penalty is per se constitutional." *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). While courts generally must follow the sentencing schemes established by the General Assembly, *see People v. Deroulet*, 48 P.3d 520, 526 (Colo.2002) (acknowledging the "primacy of the General Assembly in crafting sentencing schemes"), the Eighth Amendment prohibits sentences that are "grossly disproportionate" to a defendant's crime. *Close v. People*, 48 P.3d 528, 535–36 (Colo. 2002). For this reason, while the Constitution does not require strict proportionality, *People v. Mershon*, 874 P.2d 1025, 1030 (Colo.1994), a court must modify a sentence if the defendant's offenses "are so lacking in gravity or seriousness as to suggest that . . . [the] sentence is constitutionally disproportionate to the crime." *People v. Gaskins*, 825 P.2d 30, 36 (Colo.1992).

¶ 56 When reviewing a sentence imposed under the habitual criminal statute, a court conducts an abbreviated proportionali-

ty review, which weighs the gravity and seriousness of a defendant's triggering and underlying felonies together against the "harshness of the penalty." *Deroulet*, 48 P.3d at 525, 527. Only if this review suggests "gross disproportionality" must a court conduct an extended proportionality review by comparing the defendant's sentence with those imposed for similar offenses in the same and other jurisdictions. *Strock*, 252 P.3d at 1157.

 ¶ 57 Assessing the gravity and seriousness of a defendant's felonies "necessarily is somewhat imprecise." *Gaskins*, 825 P.2d at 36. Rather than applying a bright-line test, the court must evaluate "the harm caused to the victim or society and the culpability of the defendant" under the circumstances. *Strock*, 252 P.3d at 1157. To assist courts in this evaluation, "[c]ertain offenses have been held to be per se grave and serious for purposes of proportionality review. These include aggravated robbery, robbery, burglary, attempted burglary, accessory to first degree murder, and narcotics related crimes." *People v. Reese*, 155 P.3d 477, 479 (Colo.App.2006) (internal citations omitted). When an offense is per se grave and serious, a sentencing court may assume the gravity of the offense and proceed directly to considering the harshness of the penalty. *Close*, 48 P.3d at 538.

¶ 58 "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate." *Deroulet*, 48 P.3d at 526. Given this observation, an intermediate appellate court must affirm a habitual criminal sentence, without remanding for extended review, unless "the felonies supporting the ... sentence are lacking in inherent gravity." *People v. Anaya*, 894 P.2d 28, 32 (Colo.App. 1994); *see Mershon*, 874 P.2d at 1031 ("Extremely harsh sentences are not constitutionally disproportionate when imposed for the commission of grave offenses." (quoting *People v. Cisneros*, 855 P.2d 822, 844 (Colo.1993) (Kirshbaum, J., specially concurring in part and dissenting in part))).

### C. Facts

¶ 59 Defendant was convicted of one count of failure to register as a sex offender, which is a class five felony because it was his second offense. § 18–3–412.5(2)(a), C.R.S. 2012. The maximum presumptive penalty for a class five felony is three years imprisonment. § 18–1.3–401(1)(a)(V)(A), C.R.S. 2012. However, because the court found that defendant had committed three prior felonies, he was sentenced as a habitual criminal to twelve years imprisonment. *See* § 18–1.3–801(2)(a).

### D. Analysis

1. Triggering Offense—Failure to Register as a Sex Offender

 ¶ 60 Our supreme court has not yet addressed whether failure to register as a sex offender is per se grave and serious. Hence, we evaluate the gravity of the offense based on the harm that defendant caused and his culpability. *See Strock*, 252 P.3d at 1157; *Mershon*, 874 P.2d at 1032 (when a crime "on its face, is not a particularly grave or serious offense" a reviewing court "must examine the facts and circumstances underlying the offense in order to gauge the severity of the crime"). Under the circumstances presented, we conclude that defendant's triggering offense was not grave and serious.

¶ 61 Sex offender registration is not intended "to inflict additional punishment, but rather to aid law enforcement officials in investigating future sex crimes and to protect the public safety." *People v. Stead*, 66 P.3d 117, 120 (Colo.App.2002); *accord Jamison v. People*, 988 P.2d 177, 180 (Colo.App.1999). Thus, the harm caused by failing to register is limited to the inability of society to protect itself from known sex offenders. *See Lopez*, 140 P.3d at 108 ("[Because] sex offenders pose a continuous threat to society .... a registry is necessary to continually monitor their whereabouts for the protection of the public." (quoting *State v. Goldberg*, 819 So.2d 123, 127 (Ala.Crim.App.2001))).

¶ 62 Based on this reasoning, another division of this court held that failure to register as a sex offender is grave and serious "because it threatens harm to society by hinder-

ing the state's ability to . . . supervise the sex offender." *People v. Green*, 2012 COA 68, ¶51, 296 P.3d 260. However, the division did not discuss the facts underlying the defendant's failures to register. The particular facts presented here weigh against applying the general principle announced in *Green*. See *Cooper*, 205 P.3d at 480 ("In some cases, a court 'may need to examine the facts underlying the offenses in question in order to assess the harm caused or threatened to the victim or society and the culpability of the offender.'" (quoting *Gaskins*, 825 P.2d at 38)).

¶ 63 Because defendant told DOC of his new address soon after he moved, law enforcement was able to locate and supervise him, despite his failure to update his sex offender registration. Further, defendant's parole officer testified that he visited defendant at his new address, searched for contraband, and investigated whether the residence was a safe distance from local schools. Based on this inspection, the officer approved the residence as suitable for a sex offender. This approval indicates that defendant's presence at his new residence posed little threat to his new community. And because defendant was unregistered for at most three weeks, any risk of harm from the public's inability to identify defendant as a sex offender living at the new address was brief. Therefore, defendant's failure to register caused little harm to society.

¶ 64 Considering defendant's culpability supports the conclusion that this offense was not grave and serious. While the jury found that defendant knowingly violated the statute, nothing indicates that he acted with malice. See *Gaskins*, 825 P.2d at 37 (suggesting, by example, that the mental state of "knowledge" implies less culpability than "malice"). Also, the prosecution did not argue, nor does the evidence suggest, that defendant failed to register to elude police and commit another sex crime. See *id.* ("In evaluating the culpability of the offender . . . . [m]otive is also relevant."); *cf. People v. McCulloch*, 198 P.3d 1264, 1269 (Colo.App. 2008) (finding an otherwise minor crime to be grave and serious because the defendant committed the crime in order to "lure anoth-

er minor into a sexual encounter"). To the contrary, defendant remained in contact with law enforcement by notifying DOC of his new address, calling the detective promptly, and turning himself in at the police station.

¶ 65 The state has a valid interest in protecting the community through registration of convicted sex offenders. However, this interest does not make every failure to register a grave and serious offense. Because the circumstances surrounding defendant's conviction here do not "implicate the direct safety of the public," *People v. Patnode*, 126 P.3d 249, 261 (Colo.App.2005), we conclude that defendant's triggering offense was not "grave and serious" for purposes of proportionality review.

### 2. Underlying Offenses

¶ 66 Three other felonies supported defendant's habitual criminal sentence: aggravated incest, failure to register as a sex offender, and possession of a schedule IV controlled substance with intent to distribute. Because these felonies are the "underlying crimes upon which the habitual criminal adjudication rests," *Deroulet*, 48 P.3d at 525, we next consider their gravity and seriousness.

¶ 67 Aggravated incest is a grave and serious crime. *People v. Martinez*, 83 P.3d 1174, 1180 (Colo.App.2003); see *People v. Loyas*, 259 P.3d 505, 514 (Colo.App.2010) ("Under any circumstances, unlawful sexual contact is an extraordinary risk crime.").

¶ 68 In addition, and notwithstanding our conclusion about defendant's triggering felony, defendant's first failure to register conviction was also grave and serious. Unlike the triggering offense, which was based on a failure to update the registration with defendant's current address, the underlying failure to register was based on many years of failing to register at any address. According to an affidavit submitted to the court during the habitual criminal trial, defendant lived at "8 or 9 different locations" during this time, in both Colorado and another state. While defendant eventually provided two addresses to police, he did not provide them all. As a result, authorities were "unable to locate him" and could not determine if

he posed a threat to the community. And because the risk of harm continued over several years, as contrasted with the two or three weeks involved in the triggering offense, defendant threatened harm to society for a much longer period of time.

¶ 69 Defendant argues that his possession of a schedule IV controlled substance with intent to distribute is not grave and serious because the legislature has reclassified this crime as a misdemeanor. *See Patnode,* 126 P.3d at 261 ("Here, the General Assembly reduced the [driving] offense from a felony to a misdemeanor. In our view, this indicates the General Assembly's conclusion that the offense is not grave and serious."). However, section 18–18–405(2)(a)(III)(A), C.R.S.2012, classifies the offense as a class 5 felony.

¶ 70 Defendant fails to explain, and provides no statutory citation supporting, why this conviction is not still a felony. Thus, "[w]e decline to consider a bald legal proposition presented without argument or development." *People v. Simpson,* 93 P.3d 551, 555 (Colo.App.2003). Because our supreme court has concluded that "narcotic-related crimes are all 'grave or serious' for the purposes of proportionality review," *Deroulet,* 48 P.3d at 524, we must presume defendant's drug-related felony was also grave and serious.

### 3. Harshness of the Penalty

¶ 71 Based on defendant's two grave and serious felony convictions (and likely three, considering defendant's previous narcotic-related felony conviction), the twelve-year sentence is not "so harsh as to give rise to an inference of gross disproportionality." *Close,* 48 P.3d at 542. Other divisions of this court have upheld the constitutionality of habitual criminal sentences longer than twelve years under similar circumstances. *See, e.g., Cooper,* 205 P.3d at 481 (affirming an eighteen-year sentence, even assuming that the triggering offense was not grave and serious, because the triggering and underlying felonies "in combination ... were sufficiently grave and serious to support" the sentence); *People v. McNally,* 143 P.3d 1062, 1063–65 (Colo.App.2005) (affirming a twenty-four-year habitual criminal sentence, despite the triggering felony being a theft conviction, because "[a]t least two" of the underlying felonies were grave and serious).

¶ 72 Additionally, defendant's triggering felony conviction leaves him eligible for parole, *see* § 17–22.5–403(1), C.R.S.2012 ("Any person sentenced for a class 2, class 3, class 4, class 5, or class 6 felony, or any unclassified felony, shall be eligible for parole after such person has served fifty percent of the sentence imposed ...."), which also suggests that the sentence is not unduly harsh. *See Gaskins,* 825 P.2d at 36 (noting that an abbreviated proportionality review "tak[es] into account the defendant's eligibility for parole"); *McNally,* 143 P.3d at 1064 (affirming the defendant's twenty-four year sentence in part because it "is decidedly less severe than a life sentence or an indeterminate sentence because ... it is subject to a parole scheme that may result in early release").

¶ 73 For these reasons, we conclude that defendant's habitual criminal sentence, when compared to his triggering and underlying felonies, does not give rise to an inference of gross disproportionality. Therefore, we need not remand for an extended proportionality review, and we affirm the sentence.

## VI. Right to a Speedy Appeal

¶ 74 Finally, defendant contends "the excessive and undue delay in the Attorney General's filing of the Answer Brief" constituted a denial of due process. We disagree.

### A. Standard of Review

¶ 75 Excessive appellate delay may violate a defendant's constitutional right to due process. *People v. Whittiker,* 181 P.3d 264, 270 (Colo.App.2006). We evaluate such constitutional contentions de novo. *See People v. Al–Yousif,* 49 P.3d 1165, 1169 (Colo. 2002) ("[T]he application of the legal standard to the facts, an exercise that resolves the 'ultimate constitutional question,' merits de novo review.").

### B. Discussion

¶ 76 When determining whether appellate delay constitutes a constitutional violation, Colorado courts consider:

- The length of the delay argued by defendant;
- The reason for said delay;
- Whether the defendant asserted the right; and
- The prejudice suffered to the defendant's appeal because of the delay.

*People v. McGlotten*, 166 P.3d 182, 185 (Colo.App.2007). However, "[e]ven if the other factors weigh in the defendant's favor, no relief will be granted unless the defendant can demonstrate prejudice." *Id.* When raised on direct appeal along with other substantive contentions, the prejudice inquiry is limited to "whether the delay has impaired the defendant's appeal." *Whittiker*, 181 P.3d at 271. Thus, to obtain relief, a defendant must demonstrate "that the delay impaired his ability to present, or [the appellate court's] ability to review, a[ ] specific substantive contention." *Id.*; *cf. McGlotten*, 166 P.3d at 186–87 (finding prejudice when the division could not review the defendant's substantive contentions because of the state of the record, and reconstruction of the record was impossible due to the passage of time).

¶ 77 Here, defendant argues that he was prejudiced by appellate delay only because his incarceration has caused physical and mental harm. However, by affirming the judgment and sentence, we have concluded that defendant is properly incarcerated. Defendant has not argued, nor do we discern, any reason why a more prompt resolution of his appeal "would have yielded a different outcome." *Whittiker*, 181 P.3d at 271.

¶ 78 Accordingly, we conclude that, because defendant has not demonstrated prejudice, he is not entitled to relief.

## VII. Conclusion

¶ 79 The judgment and sentence are affirmed.

JUDGE HAWTHORNE and JUDGE RICHMAN concur.