2013 COA 165

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

John HARGROVE, Defendant–Appellee.

Court of Appeals No. 12CA1582

Colorado Court of Appeals, Div. I.

Announced December 5, 2013

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2013.

414

Daniel H. May, District Attorney, Doyle Baker, Senior Deputy District Attorney, Jack Roth, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant.

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellee.

Opinion by JUDGE TAUBMAN

¶ 1 The People appeal the trial court's determination that a forty-eight year prison sentence under the habitual criminal statute would be grossly disproportionate to the crimes of defendant, John Hargrove. The trial court imposed a sentence of twelve years in prison. We reverse and remand.

## I. Background

¶ 2 The People charged Hargrove with felony escape after his parole officer could not locate him when the battery on the GPS monitor on his ankle bracelet had not been charged. The People also charged Hargrove with four habitual criminal counts based on his previous felony convictions for sexual assault—force, criminal impersonation, failing to register as a sex offender, and possession of a schedule II controlled substance. The jury found Hargrove guilty of escape.

¶ 3 At the sentencing hearing, the trial court first determined that Hargrove was a habitual criminal based on his felony escape conviction and his four previous felony convictions.

¶ 4 The trial court then conducted an abbreviated proportionality review, but explicitly declined to conduct an extended proportionality review, stating:

> The extended review would get into details of underlying offenses[.] [T]he abbreviated review would just [involve analyzing] the names of the charges and what level felony they are without getting into details.... Under circumstances where the Court can look at the prior record and see that we are truly dealing with what one, at a glance, could see as a demonstrative minimalist record ... the Court should hold an extended proportionality review. I cannot look at [defendant's] record and determine that he has ... minimal prior criminal involvement.... If we had the extended hearing, we would go into details and circumstances of a prior sexual assault case, a prior drug case, a prior failure to register case, and so forth. We could look at, perhaps, mitigating factors that might occur in each of those.... The Court finds that you can look at the record and say that one cannot look at this and automatically say this is minimalist.... [T]his is really not an extended review situation, ... it's an abbreviated review situation.

After hearing argument from the parties, the trial court discussed Hargrove's five felony convictions, and ultimately concluded:

> The Court has granted an abbreviated proportionality review in the case and here's my analysis on that, I find this Defendant has committed one egregious violent felony and that is an aggravated rape.... [However, defendant's criminal history] does not demonstrate that he is a predatory and violent repeat offender. It demonstrates he committed an extremely serious offense for which he went to prison. After that it demonstrates that he did lesser things that are either in avoidance of his criminal history, avoidance of police, or avoidance of reality.... In this case I find it unconscionable to sentence [defendant] to forty-eight years in [prison]. He has demonstrated that he committed a horrible, violent offense for which he went to prison. The remaining offenses, in the Court's opinion, are minimal at best.... I cannot say this is a habitual criminal that shows a pattern of violence, a pattern of serious convictions.

¶ 5 The trial court sentenced defendant to twelve years in prison—the maximum in the presumptive range for his class three felony escape conviction, *see* §§ 18–1.3–401(1)(a)(V)(A), 18–8–208(2), C.R.S.2013—rather than forty-eight years in prison under the habitual criminal statute, *see* § 18–1.3–801(2)(a), C.R.S.2013.

## II. Proportionality Review

¶ 6 The People contend that the trial court erred by concluding that a forty-eight year prison sentence under the habitual criminal statute would be grossly disproportionate to Hargrove's crimes. The People also contend that, even if the trial court's abbreviated proportionality review raised an inference of gross disproportionality, the trial court was required, but failed, to conduct an extended proportionality review.

¶ 7 On this record, we cannot determine whether a forty-eight year prison sentence gives rise to an inference of gross disproportionality. We reverse and remand for further factual development of the record as to three of Hargrove's four previous felony convic-

tions. *See People v. Gaskins*, 825 P.2d 30, 38 & n. 13 (Colo.1992) (in less clear cases, trial court may obtain additional evidence to examine the facts underlying the offenses at issue and to assess the harm caused to the victim or society and the culpability of the offender). After that further factual development, the trial court should conduct an abbreviated proportionality review. If that abbreviated proportionality review gives rise to an inference of gross disproportionality, the trial court must conduct an extended proportionality review. If the abbreviated proportionality review does not give rise to an inference of gross disproportionality, the trial court shall sentence defendant to forty-eight years in prison under the habitual criminal statute.

### A. Standard of Review

■ ¶ 8 Whether a sentence is constitutionally proportionate is a question of law that we review de novo. *People v. Strock*, 252 P.3d 1148, 1157 (Colo.App.2010).

### B. Applicable Law

¶ 9 Under the habitual criminal statute, a person convicted of a felony who has been previously convicted of three felonies shall be adjudged a habitual criminal and shall be sentenced to four times the maximum of the presumptive range for the class of felony of which the person is convicted. *See* § 18–1.3–801(2)(a).

■ ¶ 10 A sentence under the habitual criminal statute violates the Eighth Amendment if it is grossly disproportionate to the defendant's crimes. *See People v. Deroulet*, 48 P.3d 520, 523–24 (Colo.2002). However, because courts must grant substantial deference to the broad authority of the General Assembly to determine punishments for crimes, "a successful challenge to the proportionality of a particular sentence is exceedingly rare." *People v. Gonyea*, 195 P.3d 1171, 1175–76 (Colo.App.2008).

■ ¶ 11 If a defendant challenges the proportionality of his sentence, the trial court must conduct an abbreviated proportionality review, in which it compares the gravity of the offense to the severity of the punishment.

*See Deroulet,* 48 P.3d at 521, 524. In conducting an abbreviated proportionality review under the habitual criminal statute, the trial court "must scrutinize the offenses in question to determine 'whether in combination they are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *Id.* at 524–25 (quoting *Gaskins,* 825 P.2d at 36).

¶ 12 Certain crimes are considered per se grave or serious for purposes of an abbreviated proportionality review. *See Deroulet,* 48 P.3d at 524 ("grave or serious" crimes for the purpose of proportionality review include aggravated robbery, robbery, burglary, accessory to first degree murder, and narcotics-related crimes). For certain other crimes, the determination of whether the crime is grave or serious depends on the facts and circumstances underlying the offense. *See People v. Mershon,* 874 P.2d 1025, 1032 (Colo.1994) (when a crime, "on its face, is not a particularly grave or serious offense[,] . . . a trial court must examine the facts and circumstances underlying the offense in order to gauge the severity of the crime"); *Gaskins,* 825 P.2d at 36–37 (discussing numerous relevant factors for evaluating the gravity or seriousness of a crime).

¶ 13 "If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a . . . court need to engage in an extended proportionality review." *Close v. People,* 48 P.3d 528, 536 (Colo.2002). "An extended proportionality review involves a comparison of the sentences imposed on other criminals who commit the same crime in the same jurisdiction and a comparison of the sentences imposed for commission of the same crime in other jurisdictions." *Deroulet,* 48 P.3d at 524.

¶ 14 If the abbreviated proportionality review yields no inference of gross disproportionality, the trial court must impose the sentence mandated by the habitual criminal statute. *See People v. Reese,* 155 P.3d 477, 479 (Colo.App.2006).

### C. Analysis

¶ 15 "[A]n appellate court is as well positioned as a trial court to conduct a proportionality review [in cases where] . . . a refined analysis requiring inquiry into specific facts not available on the appellate record [is] unnecessary." *Gaskins,* 825 P.2d at 38. We do not find this to be such a case. Instead, the abbreviated proportionality review in this case required the trial court to conduct a "refined analysis" of the facts and circumstances underlying three of Hargrove's four previous felony convictions. The trial court explicitly stated at the sentencing hearing that it did not do so, and we have found no record evidence of the facts and circumstances underlying those convictions. Thus, we reverse and remand for the trial court to engage in further factual development as detailed at the beginning of this section and to conduct a new abbreviated proportionality review. *See id.* at 38 n. 13 (discussing the trial court's role in determining "the extensiveness of the factual inquiries necessary to make a fully informed and legally sound proportionality determination").

### 1. Triggering Conviction of Felony Escape

¶ 16 Initially, we agree with the trial court that Hargrove's triggering offense of escape was not grave or serious.

¶ 17 We note that the record on appeal submitted by the People does not include the trial transcript. *See Sheron v. Lutheran Med. Ctr.,* 18 P.3d 796, 800 (Colo.App.2000) (burden is on appellant to provide record justifying reversal, and absent such a record, we presume the regularity of the trial court proceedings). Certain proffered facts in the affidavit of probable cause, however, support the trial court's conclusion that the offense was not grave or serious for purposes of proportionality review. *See Reese,* 155 P.3d at 480; *People v. Medina,* 926 P.2d 149, 151 (Colo.App.1996); *see also* § 18–1.3–801(5); *People v. Anaya,* 894 P.2d 28, 32 (Colo.App. 1994). These facts include: (1) on the date of Hargrove's release from prison, he completed the required intake process with his parole officer and had his GPS ankle monitor attached; (2) nine days later, he contacted his parole officer to provide an updated ad-

dress; and (3) only two days after that, his parole officer issued a warrant for his arrest after the officer could not locate him.

¶ 18 Our conclusion that the trial transcript would support the trial court's conclusion that the escape was not grave or serious is buttressed by both case law and recent statutory amendments. *See Reese,* 155 P.3d at 480 ("[A]ttempted escape by walking away from a facility [is] not [a] grave and serious offense[ ]...."); *Medina,* 926 P.2d at 151 ("[W]hile we do not consider escape to be a minor offense, walking away from the open [Community Responsibility Center] is less serious than breaking out of prison or jail, especially when no violence or threat thereof was involved.... Here, the [escape was] minor.").

¶ 19 Also, effective May 17, 2012, the General Assembly amended the habitual criminal statute by adding the following provision: "A conviction for escape ... shall not be used for the purpose of adjudicating a person an habitual criminal ... unless the conviction is based on the offender's escape or attempt to escape from a correctional facility ... or from physical custody within a county jail." Ch. 183, sec. 1, § 18–1.3–801(5), 2012 Colo. Sess. Laws 696. The General Assembly specified that the amendment "appl[ies] to offenses committed on or after [May 17, 2012]." Ch. 183, sec. 2, § 18–1.3–801, 2012 Colo. Sess. Laws 696. The record indicates that Hargrove's offense of escape, although not an escape from a correctional facility or jail, was committed in 2010. Therefore, this statutory amendment does not apply to Hargrove's escape conviction.

¶ 20 However, this amendment may be considered for purposes of determining whether Hargrove's escape conviction should be considered grave or serious for purposes of proportionality review. *See Anaya,* 894 P.2d at 32 ("[W]hen the General Assembly subsequently amends a criminal sentencing statute, even though the statute is to be applied prospectively, the trial court may properly consider it when determining whether a defendant's sentence was grossly disproportionate.").

## 2. Predicate Felonies

### a. Sexual Assault—Force

¶ 21 The trial court properly concluded, without inquiring into the factual circumstances, that Hargrove's previous conviction of sexual assault – force was a grave or serious crime. Although no published case has expressly so determined, we reach this conclusion based on references to sexual assault in other published opinions. *See People v. Dash,* 104 P.3d 286, 293 (Colo.App.2004) ("[S]ex offenses are considered particularly heinous crimes," and "defendant's crime [of second degree sexual assault] is serious...."); *People v. Strean,* 74 P.3d 387, 396 (Colo.App.2002) ("[W]e hold that sexual assault on a child and sexual assault on a child by one in a position of trust are grave and serious offenses [for purposes of proportionality review]."); *see also People v. Loyas,* 259 P.3d 505, 514 (Colo.App.2010) ("Under any circumstances, unlawful sexual contact is an extraordinary risk crime."); § 16–10–301(1), C.R.S.2013 ("sexual offenses are a matter of grave statewide concern").

### b. Criminal Impersonation

¶ 22 There is no supreme court authority on the issue of whether criminal impersonation is a grave or serious offense for purposes of proportionality review. Decisions by other divisions of this court are mixed on the issue. *See People v. Gallegos,* 226 P.3d 1112, 1119 (Colo.App.2009); *Reese,* 155 P.3d at 480. The *Gallegos* decision suggests that the question of whether criminal impersonation constitutes a grave or serious offense may depend on whether the "false or fictitious identity" given by the defendant is a real person who could be victimized by the impersonation. *See Gallegos,* 226 P.3d at 1119; *see also* § 18–5–113, C.R.S.2013.

¶ 23 We do not find any record evidence regarding the facts and circumstances underlying Hargrove's conviction for criminal impersonation (although the trial court indicated at the sentencing hearing that the crime was based on Hargrove giving a false name to a police officer). On remand, the trial court should engage in further factual development regarding the facts and circum-

stances underlying Hargrove's conviction for criminal impersonation. The trial court shall evaluate the trial transcript, which presumably contains more detailed evidence regarding the facts and circumstances of the criminal impersonation conviction, to determine whether the crime is grave or serious for purposes of proportionality review. If no transcript exists, the trial court shall direct that a transcript be prepared, and, if necessary, may allow the presentation of additional evidence regarding the facts and circumstances of the criminal impersonation offense.

### c. Failure to Register as a Sex Offender

¶ 24 As a recent decision by another division of this court indicates, the facts and circumstances underlying a charge of failure to register as a sex offender can vary widely, and the question of whether the offense is grave or serious is therefore fact-dependent. *See People v. Foster*, 2013 COA 85, ¶¶ 60–65, 68, —— P.3d ——, 2013 WL 2450768 (examining facts and circumstances of the defendant's two convictions for failure to register as a sex offender, and holding that one offense was not grave or serious while the other offense was grave or serious). However, it appears that only under fairly unusual circumstances would the offense not be grave or serious for purposes of proportionality review. *See id.* (holding that the offense was not grave or serious where the defendant had failed to update his sex offender registration with his new address for a period of three weeks and, during that period, his parole officer had visited and approved his new residence); *People v. Green*, 2012 COA 68, ¶ 51, 296 P.3d 260 ("[A] defendant's failure to register as a sex offender is grave or serious because it threatens harm to society by hindering the state's ability to treat and supervise the sex offender.").

¶ 25 The only evidence in the record pertaining to Hargrove's previous conviction for failing to register as a sex offender is his oral representation at the sentencing hearing that he was homeless at the time and therefore did not have an address to register. However, the record does not disclose any other facts and circumstances underlying the offense, including, for example, the length of time during which Hargrove had failed to register. We remand for further factual development regarding the facts and circumstances underlying Hargrove's conviction for failure to register as a sex offender. *See People v. Allman*, 2012 COA 212, ¶ 29, 321 P.3d 557 (homeless person living in motor vehicle may be convicted of failure to register as a sex offender).

### d. Possession of a Schedule II Controlled Substance

¶ 26 Colorado case law has consistently held that narcotics-related crimes are per se grave or serious for purposes of proportionality review. *See, e.g., Deroulet*, 48 P.3d at 524; *Foster*, ¶ 57.

¶ 27 In 2010, the General Assembly amended the statutory scheme criminalizing possession of a schedule I or II controlled substance by making possession of certain lesser amounts a class six felony rather than a class four felony. Ch. 259, secs. 3–4, §§ 18–18–403.5, –405, 2010 Colo. Sess. Laws 1164–65. That amendment, in itself, does not call into question the case authority holding that any narcotics-related offense is per se grave or serious. *Cf. Foster*, ¶¶ 69–70 (rejecting the defendant's argument that his drug offense was not grave or serious because the General Assembly had reclassified the particular offense to a lower class of felony, emphasizing that the offense was "still a felony").

¶ 28 However, we also note that, in 2011, the General Assembly amended the habitual criminal statute itself to provide that section 18–1.3–801(2)(a) would no longer apply to a class six felony for possession of a schedule I or II controlled substance. *See* Ch. 57, sec. 1, § 18–1.3–801(2)(b), 2011 Colo. Sess. Laws 151–52 (statute effective for offense committed on or after March 25, 2011). This calls into greater question the applicability to class six felony possession convictions of case law finding narcotics-related crimes to be per se grave or serious. *See Anaya*, 894 P.2d at 32. At the very least, we believe a court could factor in the amount of narcotics involved in a simple possession conviction—whether it be an extremely small

amount or a very large amount—in evaluating the broader question of whether a defendant's triggering felony and underlying felonies " 'in combination ... are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *Deroulet*, 48 P.3d at 524–25 (quoting *Gaskins*, 825 P.2d at 36).

¶ 29 The trial court, although pointing out that the General Assembly had made the possession of certain lesser amounts of narcotics a class six felony, admitted that it did not know the quantity of drugs underlying Hargrove's conviction for possession of a schedule II controlled substance. Given that we are remanding the case for further factual development regarding Hargrove's convictions for criminal impersonation and failure to register as a sex offender, the trial court should also further develop the record regarding Hargrove's conviction for possession of a schedule II controlled substance.

### 3. Additional Considerations on Remand

¶ 30 We must highlight two additional points regarding the trial court's ruling. First, we are aware of no case law authority holding that a court may find a sentence constitutionally disproportionate based only on an abbreviated proportionality review. Instead, although we found no case explicitly stating so, the governing case law in Colorado indicates that an abbreviated proportionality review can yield, at most, an inference of gross disproportionality, in which case the court must conduct an extended proportionality review. For example, in *People v. Patnode*, 126 P.3d 249, 261 (Colo.App.2005), a division of our court concluded, on the basis of an abbreviated proportionality review, "that defendant's sentence gives rise to an inference of gross disproportionality, and accordingly, *we must remand* to the trial court for an extended proportionality review." (Emphasis added.) *See also Close*, 48 P.3d at 536; *Deroulet*, 48 P.3d at 527; *Gaskins*, 825 P.2d at 36.

¶ 31 Indeed, United States Supreme Court jurisprudence indicates that the abbreviated proportionality review is a " 'threshold' " analysis in which a court can only arrive at an " 'initial' " judgment—an inference—of gross disproportionality, and if such an inference arises, the court must then conduct an extended proportionality review. *See Graham v. Florida*, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). Similarly, in *State v. Adamcik*, 152 Idaho 445, 272 P.3d 417, 458 (2012), the court stated:

> To determine whether a sentence is cruel and unusual, this Court engages in a two-part inquiry. First, this Court must make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. Where no inference of a gross disproportionality can be made, there is no necessity to make any further proportionality review. However, if an inference of such disproportionality is found, the Court must conduct a proportionality analysis comparing the defendant's sentence to those imposed on other defendants for similar offenses.

(Citations, alterations, and internal quotation marks omitted.)

¶ 32 Second, the trial court based its ruling that the habitual criminal sentence would be constitutionally disproportionate in part on its finding that Hargrove's criminal record did not show a "pattern of violence." Although the presence of violence is one factor to consider in assessing the gravity of a crime, a felony need not be violent to be considered grave or serious for purposes of proportionality review. *See Mershon*, 874 P.2d at 1033 ("[V]iolence is a relevant consideration when assessing the harm caused or threatened by an offense.... [However,] even if we were to agree that [the defendant's] offenses were nonviolent, this does not mean that his crimes are not serious [for purposes of a proportionality review]." (footnote omitted)).

### III. Conclusion

¶ 33 The sentence is reversed, and the case is remanded for further factual development of the record, for the trial court to conduct a

new abbreviated proportionality review and, if made necessary by the abbreviated review, for an extended proportionality review. If the court concludes that the sentence under the habitual offender statute is not grossly disproportionate to defendant's crimes, the court shall resentence defendant.

JUDGE MILLER and JUDGE NEY * concur.