COLORADO COURT OF APPEALS                                      **2017COA77**

---

Court of Appeals No. 14CA1175
Arapahoe County District Court No. 12CR2748
Honorable Gerald J. Rafferty, Judge
Honorable Christopher C. Cross, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rogelia Perez-Rodriguez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BOORAS
Román and Fox, JJ., concur

Announced June 1, 2017

---

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jon W. Grevillius, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Rogelia Perez-Rodriguez, defendant, appeals the judgment of conviction and sentence entered on jury verdicts finding him guilty on two counts each of aggravated incest, sexual assault on a child by one in a position of trust as a pattern of conduct, and sexual assault with the actor ten years older than the victim.  We affirm.

<h2 align="center">I.     Background</h2>

¶ 2     Defendant started dating A.S. and soon after moved in with her.  A.S. had several children from a previous marriage and had three children with defendant during their relationship.  J.H-S. was one of A.S.'s children from a previous marriage and was around eleven years old when defendant started dating A.S.

¶ 3     Although defendant and A.S. did not have a wedding ceremony and were never formally married, they publicly referred to each other as husband and wife.  And while defendant never formally adopted J.H-S., they publicly referred to each other as father and daughter.

¶ 4     In the summer of 2012, when J.H-S. was fifteen years old, defendant forced her to have sexual intercourse with him on two separate occasions, one to two weeks apart.  Defendant impregnated J.H-S., and she delivered the baby approximately nine

months after the incidents. DNA testing confirmed that defendant was the baby's biological father.

¶ 5 After discovering she was pregnant, J.H-S. told her mother what had happened, and police started an investigation. During the investigation, a detective — through an interpreter — questioned defendant. Defendant initially denied but then admitted to having had sexual intercourse with J.H-S.

¶ 6 A jury convicted defendant on all counts, and the trial court sentenced him to a life sentence with parole eligibility after twelve years.

## II. Issues

¶ 7 Defendant first contends that the aggravated incest statute is unconstitutionally vague as applied. He next contends that the aggravated incest instruction incorrectly instructed the jury that he did not need to know that J.H-S. was his stepdaughter. Defendant then alleges that the prosecution misstated the law on common law marriage during rebuttal closing argument, thereby committing reversible misconduct. Finally, defendant asserts that his confession was involuntary because the interrogating officers made implied promises of leniency and compassion, and therefore the

court erred in admitting the taped confession into evidence. We examine each contention in turn.

### III.    Aggravated Incest Statute

¶ 8        Defendant contends that the aggravated incest statute is unconstitutionally vague as applied to stepchildren of common law marriages because common law marriage itself turns on a multitude of factors and is not sufficiently defined by statute. Defendant asserts, therefore, that when a couple is not formally married, the statute fails to provide a standard by which the accused may know whether the victim is his or her stepchild. We do not agree.

### A.    Standard of Review and Applicable Law

¶ 9        We review de novo as-applied constitutional challenges to statutes. *People v. Trujillo*, 2015 COA 22, ¶ 15. A statute may be unconstitutional on its face or as applied. *People v. Stotz*, 2016 COA 16, ¶ 27. A statute is unconstitutional as applied if it does not, with sufficient clarity, prohibit the conduct against which it is enforced. *Id.*; *see also Johnson v. United States*, 576 U.S. ___, ___, 135 S. Ct. 2551, 2556 (2015). A defendant has the burden of

showing beyond a reasonable doubt that the statute is unconstitutional as applied to him or her. *Trujillo*, ¶ 15.

¶ 10     When determining whether a statute is vague, we apply common principles of statutory interpretation. *Stotz*, ¶ 28. First, we look to the language of the statute itself and interpret statutory terms in accordance with their commonly accepted meanings. *Id.* If the plain language is unclear or ambiguous, we may look beyond the words of the statute to legislative history or rules of statutory construction. *Id.* Otherwise, we apply the statute as written. *Id.*

¶ 11     Defendant preserved this argument by asserting it at trial. The trial court ruled that a common law marriage is the same as any other type of marriage for purposes of the incest statute — the only difference being how a common law marriage is proved.

### B.     Analysis

¶ 12     Colorado's aggravated incest statute says:

> (1) A person commits aggravated incest when he or she knowingly:
>
> (a) Marries his or her natural child or inflicts sexual penetration or sexual intrusion on or subjects to sexual contact, as defined in section 18-3-401[, C.R.S. 2016], his or her natural child, *stepchild*, or child by adoption, but this paragraph (a) shall not apply when the

4

person is legally married to the stepchild or child by adoption. For the purpose of this paragraph (a) only, "child" means a person under twenty-one years of age.

§ 18-6-302, C.R.S. 2016 (emphasis added).

¶ 13    The term "stepchild" is not defined by the statute, but is typically defined as a child of one's wife or husband by a former marriage or relationship. *See* Webster's Third New International Dictionary 2237 (2002). Whether a person is a stepchild depends, therefore, on whether or not the alleged stepparent and the child's biological parent are husband and wife.

¶ 14    "A common law marriage is established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption of a marital relationship." *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987). The *Lucero* court recognized that

> in many cases express agreements will not exist. The parties' understanding may be only tacitly expressed, and the difficulty of proof is readily apparent. We have recognized that 'the agreement need not have been in words,' and the issue then becomes what sort of evidence is sufficient to prove the agreement. We have stated that if the agreement is denied or cannot be shown, its existence may be inferred from evidence of cohabitation and general

> repute. In such cases, the conduct of the parties provides the truly reliable evidence of the nature of their understanding or agreement.

*Id.* at 664 (footnote and citations omitted).

¶ 15    Defendant contends that, because common law marriage relies on evidence of cohabitation and general repute, the aggravated incest statute is too vague to provide an accused with a standard by which he or she could know that a person is his or her stepchild or any standard by which law enforcement can differentiate illegal conduct from legal conduct.

¶ 16    But a lack of clearly defined terms is not fatal to a statute's constitutionality. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525-26 (1994) (concluding that statute defining drug paraphernalia by using specified, objective criteria for assessing whether an item qualifies and containing a scienter requirement was not unconstitutionally vague); *Tiplick v. State*, 43 N.E.3d 1259 (Ind. 2015) (holding drug statute constitutional because, despite having multiple undefined terms, the statute contained a scienter requirement and numerous factors to help determine the accused's intent); *State v. Munson*, 714 S.W.2d 515, 520 (Mo. 1986)

(upholding drug paraphernalia statute even though it relied on nonexclusive enumerated factors).

¶ 17    Similarly, a statute is not rendered vague when the existence of a statutory element is determined by balancing factors that are not included in the statute. *See State v. Campbell*, 756 N.W.2d 263, 270-72 (Minn. Ct. App. 2008) (upholding breach of fiduciary obligation where statute was admittedly broad and a factual determination based on numerous factors was necessary, noting that "[a]lthough the determination requires a judgment call, it is not so inherently elusive that it is not reasonably ascertainable or that it cannot be established beyond a reasonable doubt"). Common law marriage may be shown through agreement or consent in combination with a variety of factors, but the two most clearly recognized are cohabitation and "a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife." *Lucero*, 747 P.2d at 665. Furthermore,

> Specific behavior that may be considered
> includes maintenance of joint banking and
> credit accounts; purchase and joint ownership
> of property; the use of the man's surname by
> the woman; the use of the man's surname by

> children born to the parties; and the filing of joint tax returns. However, there is no single form that any such evidence must take. Rather, *any form of evidence that openly manifests the intention of the parties that their relationship is that of husband and wife will provide the requisite proof from which the existence of their mutual understanding can be inferred.*

*Id.* (emphasis added) (citation omitted).

¶ 18 There is, therefore, sufficient guidance through statute, case law, and the plain meaning of "stepchild" so that a person in a common law marriage has sufficient notice as to the prohibited conduct of aggravated incest.

¶ 19 Defendant cites *State v. Johnson,* 695 N.W.2d 165, 178-80 (Neb. 2005) (Gerrard, J., dissenting),[1] as an example of when an aggravated incest statute was unconstitutionally vague. *Johnson* is not persuasive because — in addition to being a dissenting opinion — in that case, the term "minor" was defined differently throughout Nebraska statutes, and there was no clear or definite way for the defendant to determine what age would be applied to the aggravated

---

[1] Although the majority of justices agreed with the dissent, Nebraska rules required more than a majority agreement to declare a statute unconstitutionally vague. *State v. Johnson,* 695 N.W.2d 165, 173 (Neb. 2005).

incest statute. *Id.* Colorado cases set forth a test to be routinely applied in determining whether a common law marriage exists. This eliminates the danger of arbitrary application of inconsistent definitions as was the case in *Johnson.*

¶ 20    We therefore conclude that Colorado's aggravated incest statute is not unconstitutionally vague as applied to those in a common law marriage.

## IV.    Jury Instruction

¶ 21    Defendant next contends that the trial court's elemental instruction on aggravated incest failed to properly instruct the jury on the scope of the mens rea required to sustain a conviction. We perceive no error.

### A.    Standard of Review and Preservation

¶ 22    Defendant concedes that he did not raise any objection to the elemental jury instruction, and he urges that it should be reviewed for plain error. However, the People contend that because defense counsel stated, "No, sir" when the trial court asked if there were any further objections to Instructions 1 through 24, waiver or invited error should entirely preclude review.

¶ 23    A waiver is "an intentional relinquishment of a *known* right or privilege." *Moore v. People*, 2014 CO 8, ¶ 9 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)).   A closely related concept, invited error, is based on the principle that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide by the consequences of his acts." *People v. Foster*, 2013 COA 85, ¶ 25 (quoting *Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002)).

¶ 24    Generally, defense counsel's failure to make a contemporaneous objection results in review under the plain error standard.  *See People v. Miller*, 113 P.3d 743, 749 (Colo. 2005). Although sometimes referred to as a "waiver," the complete failure to object is more precisely a "forfeiture" of rights.  *See United States v. Olano*, 507 U.S. 725, 733-34 (1993) ("Waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

¶ 25    In contrast, invited error typically requires more than the simple failure to object.  *People v. Gross*, 2012 CO 60M, ¶ 9 (where

error results from counsel's oversight, appeal is not precluded by the invited error doctrine); *People v. Garcia*, 1 P.3d 214, 219 (Colo. App. 1999) (merely failing to object to an instruction does not constitute "invited error"), *aff'd*, 28 P.3d 340 (Colo. 2001). Invited error is sometimes referred to as a strategic error. But this does not mean that the "strategy" must be competent or well planned. It simply means that the action that results in invited error must be deliberate rather than inadvertent. *See Gross*, ¶ 9. Thus, whether analyzed as waiver or invited error, there must be intentional or deliberate action in order to preclude plain error review.

¶ 26    In some cases, whether an attorney's action is deliberate rather than inadvertent may be adequately reflected by the record. In other cases, the record may not be clear. *See id.* at ¶ 11 (invited error where defense counsel argued affirmatively for an instruction despite opposition by the prosecution). The question here then is whether the record reflects a deliberate act or an inadvertent act.

¶ 27    To determine whether the statement "no objection" or even silence should be characterized as either deliberate or inadvertent, it is necessary to consider the objection or silence in the context of its circumstances. *See United States v. Anderson*, 604 F.3d 997,

1001 (7th Cir. 2010) (examining a party's state of mind to distinguish forfeiture from waiver). For example, in *Stackhouse v. People*, 2015 CO 48, the supreme court viewed counsel's silence after the trial court explained its reasoning for closing the courtroom to the public as a waiver. *Id.* at ¶ 3. Similarly, in other cases relied upon by defendant the circumstances established more than just a response to a general inquiry:

- *People v. Riley*, 2016 COA 76, ¶ 15 (the defendant's request for a lesser nonincluded instruction at trial invited the potential error that he would be convicted of that offense on insufficient evidence).

- *People v. Rediger*, 2015 COA 26, ¶ 53 (finding waiver where at conclusion of jury instruction conference, counsel stated that "[d]efense is satisfied [with the instructions]") (*cert. granted* Feb. 16, 2016).[2]

- *Foster*, ¶¶ 29, 30 (finding invited error where defense counsel agreed with the prosecutor's statement that

---

[2] Counsel's statement is similar to the statement "I am content," which was construed as an explicit withdrawal of counsel's previously proffered instruction in *United States v. Hansen*, 434 F.3d 92, 101 (1st Cir. 2006).

defendant's prior conviction acted as a sentence enhancer that should be decided by the court, and then expressly asked the court, rather than the jury, to make that finding).

- *People v. Gregor*, 26 P.3d 530, 533 (Colo. App. 2000) (the defendant's affirmative proposal with respect to one instruction and acquiescence in two others invited error).

¶ 28    Assuming that the statement "no objection" was the response to an inquiry about specific language or a specific instruction, the circumstances might support deliberate conduct.  But here, the court's inquiry grouped all twenty-four instructions.  It is not clear whether defense counsel's blanket statement indicating "no objection" reflected deliberate agreement with all the instructions or was an inadvertent failure to object to the error defendant now claims.  Thus, under the circumstances of this case, the record does not establish deliberate conduct sufficient to support invited error or waiver.  Accordingly we apply the plain error standard of review.

¶ 29    The trial court gave the following instruction regarding aggravated incest:

> The elements of the crime of Aggravated Incest as applied to Counts 1 & 2 are:
>
> 1.    That Mr. Perez-Rodriguez,
> 2.    in the State of Colorado, at or about the date and place charged,
> 3.    knowingly,
> 4.    subjected [J.H-S.] to sexual penetration or sexual intrusion, and
> 5.    [J.H-S.] was his stepchild, and
> 6.    [J.H-S.] was under twenty one years of age.

¶ 30    Defendant contends that because the court included "and" at the end of elements four and five, the "knowingly" mens rea applied only to his act of subjecting J.H-S. to sexual penetration or sexual intrusion, and not to whether he knew she was his stepchild.

¶ 31    Regardless of whether the instruction was erroneous, the evidence that defendant knew J.H-S. was his stepdaughter was overwhelming.

- Defendant referred to J.H-S. as his stepdaughter during his interview with police, even going so far as to distinguish the fact that he was not her biological father, but her stepfather.

14

- Defendant referred to A.S., J.H-S.'s mother, as his wife numerous times throughout the interview.

- A.S. referred to defendant as her husband, and she testified that defendant introduced all of her children, including J.H-S., as his own.

- J.H-S. also testified that she and defendant referred to each other as father and daughter.

¶ 32    Here, the jury found that a marital relationship legally existed, and there was no evidence that defendant did not understand a parent-stepchild relationship existed between him and J.H-S. Failure to properly instruct the jury is not plain error if the subject of the error is not contested or if evidence of the defendant's guilt is overwhelming. *Auman v. People*, 109 P.3d 647, 665 (Colo. 2005).

¶ 33    We conclude, therefore, that even if the trial court erred in giving the elemental instruction, such error was not plain error because the evidence overwhelmingly showed that defendant knew J.H-S. was his stepdaughter at the time of the incidents.

## V. Prosecutorial Misconduct

¶ 34 Defendant asserts that the prosecutor committed reversible misconduct in rebuttal closing by misstating the law on common law marriage. We do not agree.

### A. Standard of Review and Preservation

¶ 35 Because defendant did not object to the prosecutor's statements, we review only for plain error. *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005).

¶ 36 "Prosecutorial misconduct during closing arguments rarely constitutes plain error that requires reversal." *People v. Nardine*, 2016 COA 85, ¶ 63. "To warrant reversal, the misconduct must be obvious and substantial and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *Id.* "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Id.* (quoting *Domingo-Gomez*, 125 P.3d at 1053).

¶ 37 In reviewing a claim of prosecutorial misconduct we engage in a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First we determine whether the prosecutor's conduct was improper based on the totality of the circumstances, and second,

16

we determine whether such actions warrant reversal under the applicable standard, in this case, plain error. *Id.*

### B. Analysis

¶ 38    Defendant's primary defense at trial was that no common law marriage existed between him and J.H-S.'s mother. The court gave the following instruction regarding common law marriage:

> In order for J.H.-S. to be [defendant's] step-daughter, you must find beyond a reasonable doubt that a common-law marriage existed between A.S. and [defendant]. A common-law marriage is established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption and acknowledgement of a marital relationship. Behavior that may be considered by you in determining whether there was a common-law marriage, includes but is not limited to: Cohabitation, which is holding forth to the world by the manner of daily life, by conduct, demeanor, and habits, that the man and woman have agreed to take each other in marriage and to stand in the mutual relation of husband and wife; reputation, which means the understanding among the neighbors and acquaintances, with whom the parties associate in their daily life, that they are living together as husband and wife; maintenance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman; the use of the man's surname by children born to the man and woman; and the filing of joint tax returns.

¶ 39     During closing argument, defense counsel discussed several of the factors listed in the instruction, arguing that there was no common law marriage because there was no joint banking account, there was no joint property, A.S. did not use defendant's surname, and there was no evidence of joint tax returns.

¶ 40     During rebuttal, the prosecutor stated, regarding the common law marriage instruction, as follows:

> So what do we have here? And these elements, as it says, "including but not limited to," that means you can find one and find common law marriage, so long as that one is proven beyond a reasonable doubt. You can have more than one, and we do have more than one. You have cohabitation. You have them both saying that they are married; you have her saying she was his husband — he was her husband, and him saying she was his wife.

¶ 41     Defendant contends on appeal that the prosecutor's statement misstated the law by implying that one factor alone was sufficient to prove common law marriage, when the law requires evidence of both cohabitation and reputation. *Lucero*, 747 P.2d at 664 (citing *Graham v. Graham*, 130 Colo. 225, 227, 274 P.2d 605, 606 (1954)).

¶ 42     Although the prosecutor's simple reference to "cohabitation," viewed in isolation, may have misstated the law, when viewed in

18

context as rebuttal to defendant's arguments, we perceive no plain error. The court's instruction defined cohabitation as including an agreement to be married, and it correctly stated the requirements of common law marriage. The rebuttal argument merely emphasized behavior that may be used to show mutual consent or agreement to be husband and wife and a mutual and open assumption and acknowledgment of a marital relationship.

¶ 43 Defendant does not contend that the instruction itself misstated the law. When the prosecutor's statement is viewed in relation to the entirety of closing arguments and the instructions given, we conclude that even if error occurred, it was not obvious and substantial and it did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.

## VI.   Confession

¶ 44 Finally, defendant asserts that his confession was involuntary and that its admission violated his state and federal due process rights. We do not agree.

## A. Legal Principles

¶ 45    Defendant preserved his argument by filing a motion to suppress the confession. The trial court held an evidentiary hearing and denied the motion.

¶ 46    "A trial court's ruling on a motion to suppress presents a mixed question of fact and law." *People v. Cisneros*, 2014 COA 49, ¶ 56. If the statements sought to be suppressed are recorded, we independently review them to determine whether they should have been suppressed. *Id.* "Because neither party contests the facts that controlled the trial court's determination whether to admit the videotaped confession, we review its admission de novo." *People v. Wickham*, 53 P.3d 691, 694 (Colo. App. 2001).

¶ 47    A defendant's statement must be voluntary in order to be admissible. *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *Cisneros*, ¶ 80. Voluntariness is determined by the totality of the circumstances. *People v. York*, 189 Colo. 16, 20, 537 P.2d 294, 296 (1975); *Cisneros*, ¶ 81. Threats and promises of leniency may be considered in determining whether a statement was voluntary, but they are not conclusive. *Wickham*, 53 P.3d at 695. "For such threats and promises to render a confession involuntary, they must

have caused the defendant to confess, for example, where police have promised leniency in exchange for a confession or have threatened harmful consequences unless the defendant confesses."

*Id.*

¶ 48    Other factors to consider include the following:

> whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Id.* (quoting *People v. Gennings*, 808 P.2d 839, 844 (Colo. 1991)).

## B.    Additional Background

¶ 49    When defendant was taken into custody he was questioned for approximately forty minutes by a detective and a translating officer.

21

The detective advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), in English and Spanish, and defendant indicated that he understood his rights and signed a waiver form. Defendant initially denied having had any sort of sexual intercourse with J.H-S., but after approximately fifteen more minutes, he confessed to it.

¶ 50 During the interrogation, the detective told defendant several times that he did not believe defendant. The detective also told defendant

> people are going to watch this interview, to include like judges and district attorneys, and they are going to have to make a decision based on whether you are being truthful or not. If you're truthful sometimes these folks have some sort of level of compassion. But when people lie it's very bad for you.

The detective made similar remarks several times during the interview before defendant admitted to the intercourse.

## C. Analysis

¶ 51 During the interrogation, the detective never made a specific threat or promise.[3] At times he suggested that judges or

---

[3] We may conduct an independent review of the interrogation video. *See People v. Martin*, 222 P.3d 331, 334 (Colo. 2010).

prosecutors may be more lenient on a defendant who they perceive as being honest and who "took responsibility" for his actions.  These statements, however, do not promise any sort of leniency or guarantee any special treatment.  These facts are distinguishable from those in cases like *People v. Quintana*, 198 Colo. 461, 601 P.2d 350 (1979), in which a sheriff promised the defendant that

> if the defendant cooperated the sheriff would do what he could to see that the defendant was not unjustly accused of offenses he did not personally commit, although the final decision would be with the District Attorney and the court; if the defendant would talk with the sheriff and the undersheriff he might get probation since he had a clean record, and he might be released from custody that day; if he talked, the sheriff would talk to the defendant's employer, the manager of the Forbes Trinchera Ranch, about re-hiring him; and, if the defendant waited to talk until Monday, November 27th, he would have to "face the music" with the rest of the defendants.

*Id.* at 463, 601 P.2d at 351 (footnotes omitted).

¶ 52    Here, the alleged promises were merely conjectures that prosecutors or judges may show leniency, and that the detective was giving defendant an opportunity to take responsibility for his actions.  *See Gimmy v. People*, 645 P.2d 262, 268-69 (Colo. 1982)

(upholding trial court's finding that confession was voluntary where officer told defendant that he would recommend revoking defendant's sentence but ultimately the district attorney would decide the consequences of defendant's confession); *People v. Joyce*, 878 P.2d 48, 49-50 (Colo. App. 1994) (admission was voluntary where interrogating officer "indicated that the defendant's level of cooperation would be reported to the district attorney's office, but . . . he made no threats or promises to the defendant"). As for the detective's statements that he did not believe defendant, we do not perceive such statements as threatening or coercive.

¶ 53 Although defendant was detained and could not leave, he had been advised of his *Miranda* rights and signed a waiver. As shown in the videotaped interview, the body language of the detective and defendant did not suggest any sort of hostility or threat, and the interrogation was only about forty minutes long. Although defendant is not highly educated, he did not seem overwhelmed by his circumstances, and his physical appearance and mannerisms did not suggest any sort of mistreatment or coercion rendering his statements involuntary.

¶ 54    Based on the totality of the circumstances, we conclude that defendant's admission was voluntary and that the trial court did not err in admitting it into evidence.

## VII.   Conclusion

¶ 55    For the forgoing reasons, we affirm the judgment of conviction.

JUDGE ROMÁN and JUDGE FOX concur.