21CA1721 Peo v Freeman 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1721
Boulder County District Court No. 18CR1395
Honorable Norma A. Sierra, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Bryan Freeman,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General, and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

James West, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

Defendant, Michael Bryan Freeman (Freeman), appeals his judgment of conviction entered on jury verdicts finding him guilty of aggravated robbery, possession of a controlled substance, obstructing a peace officer, tampering with physical evidence, and theft.[1]

Freeman contends that because the suppression hearing transcript was destroyed in a fire and the district court found that the record cannot be reconstructed, his right to a direct appeal is violated.[2] Specifically, he argues that the lack of a transcript prevents him from challenging (1) the violation of his Sixth Amendment rights to his counsel of choice and conflict-free counsel and (2) the district court's ruling that the statements he made to police during his interrogation did not violate his *Miranda* rights. He also contends that the lack of the suppression hearing transcript forecloses any ineffective assistance of counsel claims.

---

[1] Freeman was also convicted of possession with intent to distribute a controlled substance, but that conviction was later dismissed by the district attorney.

[2] The district court clerk confirmed that the suppression transcript had been destroyed.

Most of Freeman's arguments are conclusory and normally we do not review underdeveloped arguments. But we acknowledge that destruction of the transcript was not Freeman's fault. We conclude, however, that because Freeman did not fully comply with C.A.R. 10, he invited the error when the court found that the record could not be reconstructed. As to his two contentions, we discern no error based on the existing record; therefore, we affirm his judgment of conviction. Finally, we decline to address whether any ineffective assistance of counsel claim is futile because the argument is raised prematurely.

## I. Background

In June 2018, the Longmont Department of Public Safety worked with a confidential informant (CI) to organize a drug buy from Freeman. The CI was given $290 to purchase one ounce of methamphetamine from Freeman. As the CI approached Freeman's car, Freeman motioned for the CI to get into the passenger seat. Within seconds of sitting in the passenger seat, the CI heard a gun cock behind him and noticed co-defendant Adam Lucero (Lucero) in the back seat.

The CI owed Lucero money and was unaware that Freeman and Lucero planned to rob the CI. Lucero had two guns pointed at the CI's head and asked "[w]here is my money[?]" The CI handed the money to Freeman, left his phone in the car as instructed by Freeman, exited the vehicle, and spoke with officers. Freeman and Lucero were arrested.

Following a jury trial in August 2019, Freeman was convicted as charged. After Freeman unsuccessfully collaterally attacked some of his prior convictions, the district court adjudicated him a habitual criminal in March 2021. Freeman requested a proportionality review and in September 2021, the district court determined that Freeman's controlling sentence of sixty-four years in the custody of the Department of Corrections was not grossly disproportionate.

Freeman timely filed this direct appeal in November 2021. When attempting to designate the record, Freeman discovered that the March 15, 2019, suppression hearing transcript and recording had been destroyed. After a motions division ordered a limited remand, Freeman filed a motion in the district court in November

2023 requesting that the court conclude the record could not be reconstructed. The district court granted his request.

Upon certification of the supplemental records from the district court, Freeman requested a new trial because the record could not be reconstructed. A motions division of this court denied his request but directed that such a request could be briefed to the merits division.

## II. Reconstructed Record

In his opening brief, Freeman again requested a new trial based on the missing March 15 hearing transcript. We deny his request because, to the extent the district court erred in finding the record could not be reconstructed, Freeman invited the error.

### A. Standard of Review and Applicable Law

"The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of his or her acts." *People v. Rediger*, 2018 CO 32, ¶ 34. "The doctrine of invited error generally precludes appellate review of alleged errors that were invited by a party's affirmative conduct." *People v. Becker*, 2014 COA 36, ¶ 20.

4

"It is the appellant's job to ensure that the reviewing court has an adequate record." *Knoll v. Allstate Fire & Cas. Ins.*, 216 P.3d 615, 617 (Colo. App. 2009). "[W]hen a complete transcript is unavailable, the appellant must obtain an adequate substitute." *Id.* Indeed, the appellant "remains obligated to take all steps necessary under the appellate rules to obtain the necessary record for review." *Halliburton v. Pub. Serv. Co.*, 804 P.2d 213, 217 (Colo. App. 1990).

C.A.R. 10 lays out the process a party must undertake to reconstruct a missing record. If a transcript of the evidence of a hearing is unavailable, "the parties may file a statement of the evidence or proceedings in lieu of designating transcripts with the trial court, and the trial court must certify a statement of the evidence or proceedings in lieu of a transcript." C.A.R. 10(e). If the parties disagree as to what transpired on the date of the missing transcript, "the difference must be submitted to and settled by the trial court." C.A.R. 10(g)(1).

### B. Analysis

Initially, Freeman complied with C.A.R. 10 and requested that briefing in this court be stayed so that he could seek to reconstruct

5

the record in the district court. This court granted his request on July 28, 2022. That same order gave both parties access to an unredacted, sealed March 21, 2019, minute order the district court had issued detailing what occurred and its rulings from the March 15 hearing.

In the district court, Freeman produced his own draft (unexecuted) affidavit detailing the events of March 15. He also gathered statements from his counsel at the time of the March 15 hearing, Eric Zale (Zale), and the district attorney. The original trial judge issued an order indicating that he had nothing additional to add independent of the March 21, 2019, minute order detailing the court's rulings from March 15.

The March 21 minute order stated that Zale sought to withdraw as counsel and the court held a conflict hearing under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010). Once the courtroom was cleared, Zale indicated that Freeman intended to file a grievance against him. Freeman indicated that he had not yet filed one but would do so if needed. The court discussed with Freeman that if Zale withdrew, Freeman's speedy trial deadline would be

tolled while Freeman secured new counsel.  The court denied the motion to withdraw, finding that because the grievance had not been filed, there was no irreconcilable conflict between Freeman and Zale.  The rest of the March 21 minute order (which had already been public) detailed the court's denial of Freeman's motion to suppress certain statements he made to officers.

Despite gathering accounts of the March 15 hearing from all participants, Freeman did not ask the district court to certify any part of his draft affidavit or the other attorneys' statements to be part of the settled record.  Instead, Freeman argued that because Zale did not remember that a *Bergerud* hearing was held and the district attorney only remembered general details of the suppression hearing, any additional proceedings to reconstruct the record would be futile.  As a result, Freeman asked for, and the court entered, an order that the record could not be reconstructed.

Contrary to what was required by C.A.R. 10(e), Freeman did not ask the district court to certify the undisputed evidence in lieu of a transcript.  Much of the participants' recollections are not in dispute.  For example, Freeman, Zale, and the district court agree

7

that Zale requested to withdraw as counsel, though Zale does not remember the exact date. Freeman, Zale, and the district court agreed that the purported conflict was, in part, related to Freeman's intent to file a grievance against Zale (although Zale recollected that he thought Freeman had already filed a complaint). Freeman, Zale, and the district court agreed that Freeman was concerned with waiving his speedy trial rights if Zale withdrew as counsel.

True, there are disputes between Freeman and his counsel as to certain details. For example, Freeman recollects that part of his dissatisfaction with Zale was that Zale missed appointments and had not provided him with discovery. Zale disagreed, saying he had not missed any appointments and that they had "gone over the discovery at length." But when asking the district court to settle the record, Freeman said that, even if his counsel had more specifics about the *Bergerud* hearing, "the Attorney General and the Court of Appeals will not accept the defense's version of the events."

Contrary to Freeman's view, it is not for the Attorney General or this court to accept a certain version of events when settling the record. Instead, it is the district court's responsibility to make

8

finding of fact, resolve conflicting evidence, and make credibility determinations. *See People v. Mendoza-Balderama*, 981 P.2d 150, 157 (Colo. 1999) ("It is the function of the trial court and not the reviewing court to weigh the evidence and determine the credibility of the witnesses."). And Freeman did not request that the district court resolve those differences, as required by C.A.R. 10(g)(1). We acknowledge that by the time Freeman asked the district court to settle the record, the trial judge was not the same judicial officer who presided over the suppression hearing. But it is still the appellant's responsibility to have the district court resolve the differences in the record. This is especially true when, as here, the trial judge who presided over the March 15 hearing issued a detailed minute order.

We further acknowledge that Freeman attempted to reconstruct the record from the March 15 hearing, but he is not entitled to automatic reversal of his judgment because he failed to follow all requirements of C.A.R. 10. *See People v. Conley*, 804 P.2d 240, 243 (Colo. App. 1990). And despite our conclusion that Freeman invited the error, the existing record is adequate for us to

address his substantive contentions. Indeed, even when a record does not include a transcript, we do not presume prejudice requiring automatic reversal if the record is sufficient for intelligent review of the defendant's contentions. *See People v. Whittiker*, 181 P.3d 264, 270 (Colo. App. 2006).

III. Rights to Counsel of Choice and Conflict-Free Counsel

Freeman contends that because there is no reconstructed March 15 transcript, we lack a sufficient record to determine whether his Sixth Amendment rights to counsel of choice and conflict-free counsel were violated. We disagree.

A. Standard of Review and Applicable Law

We review a district court's denial of a counsel's motion to withdraw for an abuse of discretion. *Ronquillo v. People*, 2017 CO 99, ¶ 13. A district court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008).

The Sixth Amendment includes a defendant's right to hire and fire retained counsel of choice without a showing of good cause. *Ronquillo*, ¶ 27. But the right to fire retained counsel is qualified;

"[w]hile a defendant may fire retained counsel for any reason, circumstances may prohibit him from proceeding the way he desires." *Id.* at ¶ 29.

The Sixth Amendment right to counsel also includes "the right to conflict-free counsel." *People v. Shari*, 204 P.3d 453, 460 (Colo. 2009). But the "mere 'possibility of a conflict is insufficient' to establish a Sixth Amendment violation.'" *Id.* at 457 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). A defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance" to prevail under a Sixth Amendment claim. *Cuyler*, 446 U.S. at 350.

## B.    Analysis

We conclude for three reasons that Freeman's Sixth Amendment rights to counsel of choice and conflict-free counsel were not violated.

First, the record supports that Freeman's counsel requested to withdraw as his counsel. Therefore, the court did not deny Freeman's *request* to have his counsel withdraw. In other words, because Freeman had privately retained counsel, he had the right

11

to fire his counsel but he chose not to and proceeded with Zale representing him at the suppression hearing.[3]

Freeman's affidavit, Zale's statement, and the court's minute order all confirm that Zale requested to withdraw as counsel. Freeman stated that once he had shown Zale a copy of the draft grievance complaint, Zale addressed the court by saying, "We have a problem.  I would like to withdraw as Mr. Freeman's counsel." Zale said in his statement, "I did move to withdraw based upon what I believed to be a conflict of interest based upon the grievance."  And the court's sealed minute order stated, "Defense counsel moved to withdraw, arguing that there was a conflict. Defense counsel provided that the Defendant may have filed a grievance against him."[4]

Second, Freeman chose not to fire Zale at the time of the suppression hearing because the record supports that Freeman did

---

[3] Although a defendant may generally fire privately retained counsel, "[t]he right to counsel of choice is not absolute and must sometimes give way to the demands of fairness and efficiency." *Ronquillo v. People*, 2017 CO 99, ¶ 35.
[4] Shortly after the March 15 hearing, Freeman fired Zale.  Freeman was briefly represented by alternate defense counsel and then retained private counsel who represented him at trial.

not want to waive his right to a speedy trial. The court said in its minute order that it "provided to the Defendant that the consequence of appointing new counsel [was] that speedy trial would suspend because the trial would likely be continued, as [the] trial [was] currently set . . . [for] April 15, 2019." Zale said, "I have no idea why Mr. Freeman continued to refuse to waive speedy and to have me represent him at this hearing. He was in custody at the time and would have qualified for court appointed counsel." And Freeman confirmed that the judge advised him that he would have to waive his right to a speedy trial if Freeman fired Zale, and that Freeman "wouldn't take a continuance" because his right to a "speedy trial was very important to [him]."

Indeed, if Freeman had removed retained counsel, the speedy trial period would have been extended. *See* § 18-1-405(6)(f), C.R.S. 2024 ("In computing the time within which a defendant is brought to trial as provided in subsection (1) of this section, the following periods of time are excluded: . . . The period of any delay caused at the instance of the defendant."). Therefore, the court properly advised Freeman of the consequences of firing counsel. *See*

13

*Ronquillo*, ¶ 29 ( "[B]efore a trial court grants a request to release retained counsel from a case, it must ensure that the defendant understands and accepts the consequences of doing so."); *see also People v. McKimmy*, 2014 CO 76, ¶ 8, n.3 (the defendant agreed to toll his right to a speedy trial in light of obtaining new counsel); *People v. Scales*, 763 P.2d 1045, 1048 (Colo. 1988) ("Continuances made necessary because of the substitution of counsel may, depending upon the particular circumstances of the case, be chargeable to the defendant.").

Finally, we discern no error in the court's finding that the proposed grievance did not create an irreconcilable conflict between Freeman and his counsel. In *People v. Martinez*, 722 P.2d 445, 446 (Colo. App. 1986), a division of this court held that the "mere filing of a grievance because of disagreement as to trial tactics does not, without more, demonstrate that the relationship has deteriorated to a point at which counsel is unable to give effective aid to the client." In that case, defense counsel moved to withdraw after defendant filed a grievance against counsel with the Colorado Supreme Court. *Id.* The division affirmed the denial of the motion to withdraw, as

14

the district court reasoned that the defendant had made "no claim that the attorney's conduct of the trial was in any way deficient" and the record supported that defendant's counsel "competently represented the defendant's interest." *Id.*; *see also United States v. Williamson*, 859 F.3d 843, 858 (10th Cir 2017) ("[A] defendant's mere filing of a disciplinary inquiry or criminal complaint against his attorney is not enough to establish an actual conflict of interest.").

Here, Freeman said that he had not filed the complaint against Zale. And regardless, the court noted that Freeman may have instead been upset about the prosecutor filing habitual criminal counts against him. The court specifically made findings that during the *Bergerud* hearing, Freeman's "demeanor was calm" and that he "showed a degree of equivocation or pensiveness on Mr. Zale's representation." *Id.* Even if Freeman were to dispute the description of his demeanor and his behavior regarding Zale's representation, we are bound by the court's credibility assessments, as it had the opportunity to observe Freeman during the hearing and its findings are not "so clearly erroneous as not to find support

15

in the record." *People v. Turner*, 2022 CO 50, ¶ 19 (citation omitted).

Accordingly, we conclude that Freeman's Sixth Amendment rights were not violated.

## IV.   *Miranda* Waiver

Freeman contends that the lack of a transcript prevents him from arguing that his *Miranda* waiver was not voluntary, knowing, and intelligent and, therefore, the statements he made to the police should have been suppressed. We disagree and conclude that the record is sufficient to affirm the district court's finding that Freeman's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

### A.   Additional Facts

In June 2018, Freeman was arrested and brought to the Longmont Police Station. Freeman's interrogation was audio recorded. Before being questioned, Freeman was read his *Miranda* rights. Freeman verbally acknowledged he understood his rights and waived them to talk with detectives. The recorded interview lasted approximately twelve minutes.

Freeman filed a motion to suppress all his statements he made to police, arguing that he did not voluntarily, knowingly, or intelligently waive his *Miranda* rights.

At the suppression hearing, three law enforcement officers — two officers and one detective — testified regarding the *Miranda* issue.

In the March 21 minute order, the court held that Freeman voluntarily, knowingly, and intelligently waived his *Miranda* rights and that the statements he made were not coerced. Specifically, the court stated that (1) Freeman was read his *Miranda* rights and agreed to talk; (2) the interviewing officer's and Freeman's tones were conversational; (3) there were no physical threats or nonverbal communication; and (4) Freeman answered some questions but declined to answer others.[5]

B.    Standard of Review and Applicable Law

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *People v. Ramadon*, 2013 CO 68,

---

[5] Freeman's motion to suppress, the March 15 minute order, and his briefing on appeal do not challenge any specific statements outside of the those he made during the audio recording.

¶ 21.  We defer to the district court's factual findings and uphold them if they are supported by the record.  *Id.*  But we review the legal effect of the facts de novo.  *Id.*

Where, as here, the interrogation is audio-recorded and there are no disputed facts outside the recording pertinent to a suppression ruling, we are in the same position as the trial court in deciding the voluntariness issue.  *Id.*  In such instances, the question on appeal is one of law and is reviewed de novo.  *People v. Springsted*, 2016 COA 188, ¶ 16; *see also People v. Madrid*, 179 P.3d 1010, 1014 (Colo. 2008).

Under the Due Process Clauses of the United States and Colorado Constitutions, a defendant's involuntary statements are not admissible evidence.  See U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25; *Mincey v. Arizona*, 437 U.S. 385, 387 (1978); *People v. Raffaelli*, 647 P.2d 230, 234 (Colo. 1982).

Therefore, before being questioned, a defendant must be read his *Miranda* rights.  But a defendant "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  When

18

a defendant seeks to suppress a statement on the ground that it was made in violation of his *Miranda* rights, the prosecution must prove by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of his *Miranda* rights. *People v. Mejia-Mendoza*, 965 P.2d 777, 780 (Colo. 1998). Courts will review the totality of the circumstances to determine if a person's *Miranda* rights have been violated. *People v. Kaiser*, 32 P.3d 480, 484 (Colo. 2001).

"Statements are voluntary if they are the product of an individual's free and rational choice." *People v. Mendoza-Rodriguez*, 790 P.2d 810, 816 (Colo. 1990); *see also Ramadon*, ¶ 19. The statement must not be the product of "any direct or implied promises," or result from the government's exertion of improper influences. *People v. Medina*, 25 P.3d 1216, 1222 (Colo. 2001). Coercive physical or psychological governmental conduct can render an otherwise voluntary statement involuntary under certain circumstances. *Cardman v. People*, 2019 CO 73, ¶ 21.

"The focus of the voluntariness inquiry is whether, under the totality of the circumstances, the behavior of the official was

coercive so as to overbear the defendant's will in making the statements." *People v. Zadran*, 2013 CO 69M, ¶ 10. This analysis requires a two-step inquiry: (1) whether the police conduct was coercive; and (2) if so, whether the coercive conduct played a significant role in inducing the statement. *Id.* at ¶ 10; *see also People v. Coke*, 2020 CO 28, ¶ 19. We consider a nonexclusive list of factors:

    (1)    whether the defendant was in custody;

    (2)    whether the defendant was free to leave;

    (3)    whether the defendant was aware of the situation;

    (4)    whether the police read *Miranda* rights to the defendant;

    (5)    whether the defendant understood and waived his *Miranda* rights;

    (6)    whether the defendant had an opportunity to confer with counsel or anyone else prior to or during the interrogation;

    (7)    whether the statement was made during the interrogation or volunteered later;

(8)    whether the police threatened [the] defendant or promised anything directly or impliedly;

(9)    the method [or style] of the interrogation;

(10)  the defendant's mental and physical condition just prior to the interrogation;

(11)  the length of the interrogation;

(12)  the location of the interrogation; and

(13)  the physical conditions of the location where the interrogation occurred.

*Cardman,* ¶ 23; *see also Zadran,* ¶ 11. A court will determine how much weight to give each factor depending on the circumstances of that particular case. *Cardman,* ¶ 27.

For a waiver to be knowing and intelligent, the defendant must possess "an awareness of both the nature of the right and the consequences of the decision to waive it." *Mejia-Mendoza,* 965 P.2d at 780.

C.    Analysis

We conclude that Freeman voluntarily waived his *Miranda* rights.

Six of the *Cardman* factors appear to weigh in favor of a finding of involuntariness. Freeman was in custody at the time of the interview (factor 1); he was not free to leave because he was in custody (factor 2); he was presumably not allowed to confer with counsel given the short amount of time between when the incident occurred and when Freeman arrived at the police station (factor 6); he made incriminating statements during the interview (factor 7); and the interview took place in a small room of a police station[6] (factors 12 and 13).

Yet seven factors appear to weigh in favor of the court's finding of voluntariness. Freeman was arrested shortly after the robbery and upon questioning he immediately began discussing the events that transpired leading up to the robbery (factor 3); Freeman was read his *Miranda* rights (factor 4); Freeman stated he understood those rights and then agreed to talk with detectives (factor 5);

---

[6] The parties' briefs do not discuss the size of this room and there is no video recording of the interview. We will assume it was a small room for purposes of our analysis.

detectives did not threaten or promise anything directly or impliedly (factor 8); detectives were respectful and the interview was conducted in a conversational manner (factor 9); although Freeman exhibited some stress at times, his mental and physical condition appeared normal before the interview (factor 10); and the interview lasted approximately than twelve minutes (factor 11).

In determining whether a defendant's statements are involuntary, our analysis is not "quantitative," based on how many factors fall on either side of the tally. But after considering all of the factors together, our independent review leads us to conclude that Freeman voluntarily waived his *Miranda* rights.

The audio recording reveals no undue influence from the detectives that would amount to overbearing Freeman's free will and choice. Freeman fails to point to evidence in the record that indicates he was coerced into speaking with detectives. He merely provides conclusory arguments that his statements were not voluntary. For example, there is no evidence that detectives even suggested to Freeman that he might gain leniency if he was honest. *See People v. Perez-Rodriguez*, 2017 COA 77, ¶ 51-52 (Police

23

"suggested that judges or prosecutors may be more lenient on a defendant who they perceive as being honest and who 'took responsibility' for his actions. These statements, however, do not promise any sort of leniency or guarantee any special treatment.").

Next, we conclude that the district court did not err when it found that Freeman knowingly and intelligently waived his *Miranda* rights.

At the beginning of the police interview, detectives read Freeman his *Miranda* rights and asked whether he understood his rights and wished to continue speaking with detectives. Freeman answered affirmatively to both. Freeman was cognizant at the time that he was waiving his rights. There was no language barrier between Freeman and the detectives. The interview contains no indication that the detectives misled Freeman, that he did not understand his rights, or that the detective read the *Miranda* rights in a confusing manner.

Nonetheless, Freeman contends that his answers are barely audible on the recording, which, according to him, supports that he did not knowingly and intelligently waive his rights. But in

24

listening to the recording, we could hear the detective read him his *Miranda* rights and Freeman affirmatively waived them and agreed to speak. Although there are times that the audio is difficult to hear, there is no indication that Freeman recanted his waiver or at any time asked for counsel.

Thus, we conclude that the court's denial of Freeman's motion to suppress is supported by the record.

                    V.    Ineffective Assistance of Counsel

Finally, we decline to review whether any ineffective assistance of counsel claim is futile due to the missing transcript.

Generally, a criminal defendant cannot "raise a claim of ineffective assistance of counsel on direct appeal because such a claim ordinarily requires the development of a factual record that will not have been developed in the trial court." *A.R. v. D.R.*, 2020 CO 10, ¶ 62; *see also Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) ("[D]efendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal."); *People v. Vondra*, 240 P.3d 493, 495 (Colo. App. 2010) ("[I]neffective assistance of counsel claims involve factual issues that should be

resolved by the trial court and are thus not properly raised for the first time on direct appeal.");

"Such procedure promotes judicial economy because the conviction may be overturned in the course of the direct appeal." *People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994). Although the record may support that the defendant received ineffective assistance of counsel, it may still "require explanations by trial counsel about alleged incompetent acts or omissions, or expert testimony as to the requisite standard of care in the applicable legal community," and a "trial court is positioned to hear and evaluate evidence as necessary." *Id.*

Because Freeman raises his arguments pertaining to potential ineffective assistance of counsel on direct appeal, we decline to address them as premature.

## VI. Conclusion

The judgment of conviction is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.