22CA1678 Peo v Devoe 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1678
Arapahoe County District Court No. 21CR1353
Honorable Ryan J. Stuart, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Frank Adam Devoe,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Philip J. Weiser, Attorney General, Patrick A. Withers, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Frank Adam Devoe, appeals his conviction and sentence as a special offender. Devoe argues there was insufficient evidence to support his conviction as a special offender, that the trial court failed to properly consider all the sentencing factors, and that the trial court erred when it imposed a sentence that isn't proportional to his conviction. We affirm.

## I.    Background

¶ 2    On June 15, 2021, while Devoe was on parole, two parole officers, Elesia Barnes and Wendy Beach, arrived at Devoe's home to conduct a search. When the officers knocked, William Wilson, who didn't live there, answered the door. The officers entered the home, and Wilson informed them that Devoe was in the back bedroom. The officers called for Devoe to come out but he didn't emerge for a few minutes.

¶ 3    Once Devoe emerged from the bedroom, Wilson fled the scene. After Wilson's escape, Officer Barnes placed Devoe in handcuffs and searched his person. Officer Barnes discovered a bag containing a white substance in one of Devoe's pockets, and money in the other.

¶ 4    Next, the officers searched Devoe's apartment. Barnes found a handgun inside a medical boot next to the kitchen table. In Devoe's

1

bedroom, the officers discovered more bundles of money, another baggie containing a white substance, and another handgun on the bed, under some pillows and blankets. In total, officers found $5,100 in bundles of cash — despite Devoe being unemployed at the time; 232 grams of suspected illegal drugs — later confirmed to be cocaine; 3 scales; and 2 loaded handguns.

¶ 5 Devoe was arrested and charged with possession with intent to manufacture or distribute over 225 grams of a controlled substance, a level 1 drug felony; two special offender sentence enhancers based on his possession of a deadly weapon; and two counts of possession of a weapon by a previous offender (POWPO). Devoe pleaded guilty to one of the POWPO counts in exchange for the dismissal of the other POWPO count. Devoe pleaded not guilty to the remaining charges.

¶ 6 The possession with intent to distribute charge was later reduced to possession with intent to distribute between 14 grams and 225 grams of cocaine — a level 2 drug felony. §§ 18-18-405(1)(a), (2)(b)(1)(A), C.R.S. 2025. The presumptive sentencing range for a level 2 drug felony is four to eight years in the custody of the Department of Corrections (DOC). § 18-1.3-401.5(2)(a), C.R.S.

2

2025.  The two special offender sentence enhancers, however, raised the level 2 drug felony to a level 1 drug felony with an increased sentencing range of twelve to thirty-two years in the custody of the DOC.  § 18-18-407(1), C.R.S. 2025; § 18-1.3-401.5(7).  One of the special offender charges required the jury to find that Devoe "used, displayed, or possessed on his . . . person or within his . . . immediate reach, a deadly weapon" while he possessed the drugs.  § 18-18-407(1)(d)(I).  The other special offender charge required the jury to find that Devoe or his confederate possessed and had access to a gun "in a manner that posed a risk to others" while Devoe possessed the drugs.  § 18-18-407(1)(d)(II).

¶ 7     Following a three-day trial, the jury found Devoe guilty of the possession with intent to distribute charge and the special offender sentence enhancer that required the gun to be within Devoe's "immediate reach."  § 18-18-407(1)(d)(1).  But the jury acquitted Devoe of the other special offender charge.

¶ 8     The defense requested a twelve-year sentence, while the prosecution requested a twenty-four-year sentence.  Ultimately, the court sentenced Devoe to thirty-two years — the maximum

sentence within the presumptive sentencing range. § 18-1.3-401.5(7). The court also imposed a three-year sentence for the POWPO conviction to run concurrently with the thirty-two-year sentence.

## II.     Issues on Appeal

¶ 9     Devoe makes three arguments on appeal. First, he contends that there was insufficient evidence presented at trial to show that either of the guns found in the apartment were within his "immediate reach" so as to subject him to the special offender enhancer. § 18-18-407(1)(d)(I). Second, Devoe contends that the court abused its discretion when it sentenced Devoe to thirty-two years in the custody of DOC without properly considering all of the sentencing factors. Third, Devoe contends that his thirty-two-year sentence is constitutionally disproportionate to his convictions. We consider and reject his contentions, in turn, below.

### A.     Sufficiency of the Evidence

¶ 10    Devoe contends that the trial court erred by denying his motion for a judgment of acquittal because the prosecution failed to present sufficient evidence that either gun was within his

"immediate reach" while he was in possession of the drugs.  We disagree.

### 1.    Standard of Review and Relevant Law

¶ 11    We review de novo a court's ruling on a motion for judgment of acquittal for insufficient evidence.  *People v. Hill*, 2025 COA 12, ¶ 19.  Whether a motion for judgment of acquittal should have been granted is determined by the substantial evidence test.  *Id.*  "We consider 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'"  *McCoy v. People*, 2019 CO 44, ¶ 63 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

¶ 12    As noted before, section 18-18-407(1)(d)(I) defines a special offender as a defendant who "used, displayed, or possessed on his . . . person or within his . . . immediate reach, a deadly weapon . . . at the time of the commission of a violation."

## 2. Additional Facts

¶ 13     At trial, Officer Barnes described her interaction with Devoe on the day that she and Officer Beach showed up to search Devoe's home. To begin, Officer Barnes testified that she didn't see Devoe until he came out of the bedroom:

> [Prosecutor:] Okay. When you first walked into the home, could you see Mr. Devoe?
>
> [Officer Barnes:] No.
>
> [Prosecutor:] Do you know now where he was?
>
> [Officer Barnes:] Yes. He was in the back bedroom.
>
> [Prosecutor:] Okay. Did he ever emerge from that back bedroom?
>
> [Officer Barnes:] Yes.
>
> [Prosecutor:] Okay. Did you shout for him to come out or anything like that?
>
> [Officer Barnes:] Yes, we called for him.
>
> [Prosecutor:] Okay. And did he come out of that back room?
>
> [Officer Barnes:] He did.

¶ 14     Officer Barnes confirmed that neither officer saw Devoe until he emerged from the bedroom:

> [Prosecutor:] Aside from Mr. Wilson, when you first entered the home, did you see anybody?

> [Officer Barnes:] Not right away. Mr. Wilson said that Mr. Devoe was in the back bedroom. He went to get him to tell him to come — come to the living room.
>
> [Prosecutor:] And did Mr. Devoe emerge from that back bedroom?
>
> [Officer Barnes:] Yes, he did.

¶ 15    Officer Barnes also testified that "a few minutes" passed before Devoe emerged from the bedroom. However, neither officer saw Devoe inside the bedroom before he emerged, and no evidence was offered at trial regarding the size of the bedroom.

¶ 16    After the prosecution rested, Devoe's counsel moved for a judgment of acquittal on the two special offender charges, arguing that insufficient evidence had been offered to prove that either gun had been within Devoe's immediate reach. The court disagreed and found that there was sufficient evidence to support both special offender charges:

> The evidence that was presented to the jury included that two handguns were found near [Devoe]; that the handguns were operational and loaded; that a reasonable jury could conclude, based upon this evidence, that at some point in the possession with intent to distribute, even before police officers arrived, that [Devoe] had that gun [sic] in his

7

possession on his person or within his immediate reach.

### 3. Analysis

¶ 17 Devoe raises the same argument he raised below in his motion for a judgment of acquittal as to why he can't be subject to the special offender sentence enhancer. To support his contention, he highlights the lack of evidence presented at trial on the size of the bedroom or his position within that bedroom in relation to the gun. We aren't persuaded.

### a. "Immediate Reach"

¶ 18 Before addressing whether the evidence that the gun was within "immediate reach" was sufficient, we must first consider the meaning of the phrase. The phrase isn't statutorily defined, and no published appellate decision in Colorado has defined "immediate reach" in the context of the special offender statute.

¶ 19 The only Colorado case that addresses when a deadly weapon is within a defendant's immediate reach as an element of the special offender statute is *People v. Serna-Lopez*, 2023 COA 21. In *Serna-Lopez*, the division determined that a gun found in the trunk of a car wasn't within the driver's, or his passenger's, immediate reach.

*Id.* at ¶ 29 n.2.  Despite discussing the phrase, the division in *Serna-Lopez* didn't define it.

¶ 20     In the absence of a definition in the statute or case law, we construe the phrase according to its common usage.  § 2-4-101, C.R.S. 2025.  Merriam-Webster Dictionary defines "immediate" as "occurring, acting, or accomplished without loss or interval of time," "existing without intervening space or substance," and "acting or being without the intervention of another object, cause, or agency."  Merriam-Webster Dictionary, https://perma.cc/5T77-36VH.  Merriam-Webster defines "reach" as "to touch or grasp by extending a part of the body."  Merriam-Webster Dictionary, https://perma.cc/UR2U-GKNG.

¶ 21     Taken together, the phrase "immediate reach" means able to touch or grasp instantly and without obstruction.  This definition is consistent with the decision in *Serna-Lopez* because there the gun was obstructed by the closed trunk.  Accordingly, we will conduct our analysis under the common usage definition of "immediate reach" — within grasp without delay or obstruction.

¶ 22     To start, this case is readily distinguishable from *Serna-Lopez*. The gun in *Serna-Lopez* wasn't immediately available because it was

locked away in a separate compartment of the car from where the driver and his passenger were sitting. Here, however, the gun was found on Devoe's bed in the bedroom where he was for a few minutes after officers arrived on scene. The gun wasn't locked away in a closet or drawer. Instead, the gun was on top of the bed, covered only by blankets and pillows within his immediate reach. And when he emerged from the bedroom, a search of his person revealed that he had cocaine in the pocket of his pants — meaning he was in possession of the cocaine while in the bedroom.

¶ 23    From this evidence, a jury could reasonably infer that the gun was within grasp without delay or obstruction while he was in possession of cocaine.

### b.    Circumstantial Evidence Is Sufficient

¶ 24    While it's true that the prosecution didn't present any *direct* evidence establishing that Devoe was within the immediate reach of either gun in the apartment while he was in possession of cocaine, there was ample *circumstantial* evidence supporting such a finding. *See People v. Bennett*, 515 P.2d 466, 469-70 (Colo. 1973) (holding that same test for assessing the sufficiency of evidence applies whether the evidence is direct or circumstantial). Specifically, the

10

circumstantial evidence presented at trial was sufficient for the jury to draw the following inferences:

| Evidence | Reasonable Inference |
|---|---|
| The officers' testimony that Devoe emerged from the bedroom a few minutes after they announced their arrival at Devoe's home. | Devoe was in the bedroom — and free to move about it without being observed — for a few minutes after being summoned by the officers. |
| Officer Barnes' testimony that she discovered the gun hidden on the bed under the sheets after Devoe emerged from the bedroom. | Devoe had the gun either on his person or nearby in the bedroom when the officers arrived and hid it when he heard the officers outside. |
| Officer Barnes' testimony that Devoe had cocaine in his pocket when he was searched immediately after emerging from the bedroom. | Devoe possessed cocaine while in the bedroom with the gun. |

¶ 25      This evidence taken together supports at least one of two reasonable inferences: (1) the gun was immediately available to Devoe while he was in the bedroom since it was on the bed under blankets and pillows; or (2) Devoe hid the gun under the blankets and pillows before leaving the bedroom, meaning he actually possessed the gun at some point while he was in the bedroom and in possession of cocaine.

¶ 26      Neither of these reasonable inferences require evidence of the size of Devoe's bedroom or his position in the bedroom in relation to

11

the gun. Instead, there is sufficient evidence that Devoe had ample time and opportunity — either before the officers arrived or after they arrived and before he emerged from the bedroom — to be within immediate reach of the gun and in possession of drugs at the same time.

¶ 27 Simply put, the circumstantial evidence presented at trial and the reasonable inferences that can be drawn from that evidence are sufficient in quality and quantity to support the jury's finding that at some point, either while officers were present during the moments that Devoe was in the bedroom, or before officers arrived, Devoe had been in possession of drugs and also had a gun within his immediate reach inside the apartment.

¶ 28 Therefore, the evidence presented at trial, when viewed in the light most favorable to the prosecution, was sufficient to support the jury's verdict that on the day in question, Devoe was in possession of cocaine and had come within immediate reach of one of the two guns in his apartment. Accordingly, we discern no error in the court's decision to deny Devoe's motion for a judgment of acquittal.

## B. The Court Considered All the Necessary Sentencing Factors

¶ 29  Next, Devoe argues that the court didn't consider all the necessary sentencing factors when it sentenced him to thirty-two years in the custody of the DOC and instead impermissibly focused on Devoe's lack of potential for rehabilitation. We disagree that the court erred.

### 1. Standard of Review and Relevant Law

¶ 30  We review a trial court's sentencing decision for an abuse of discretion. *People v. Linares-Guzman*, 195 P.3d 1130, 1137 (Colo. App. 2008). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Heredia-Cobos*, 2017 COA 130, ¶ 30. When exercising its sentencing discretion, a court must consider: (1) the nature of the offense; (2) the character and rehabilitative potential of the offender; (3) the deterrence of crime; and (4) the protection of the public. *People v. Herrera*, 2014 COA 20, ¶ 17; *see* §§ 18-1-102.5, 18-1-409(1), C.R.S. 2025.

### 2. Additional Facts

¶ 31  At sentencing, the prosecutor began by outlining Devoe's lengthy criminal history:

> This is [Devoe]'s ninth felony case — felony conviction. His first felony conviction was also for dealing drugs when he was [twenty-six] years old in the mid[-eighties] . . . .
>
> Notably, of course, Your Honor, [Devoe] also has a conviction from 2012 for a different type of illegal trafficking. That one, human chattel for the procurement of a child.

¶ 32    The defense offered details of Devoe's past as mitigation for his conviction, arguing as follows:

> In talking with Mr. Devoe, one thing became very clear that he has had issues related to addiction and drugs his entire life. Both with his parents abusing it, with his own personal use.
>
> Mr. Devoe graduated high school. He was beginning community college when his mother passed away from an overdose. And Mr. Devoe told me that, you know, at that point, he basically spiraled. He had a lot of depression. He began using. He dropped out of school. He, in essence, continued a cycle his parents had started. He had significant issues. Looking at his criminal history, almost all of it relates to his drug use in one way or the other.

¶ 33    Afterwards, the court explained the purposes of a sentence:

> The purpose of sentences [is] to punish in relation to the seriousness of the offense, to assure fair and consistent treatment of convicted offenders, to prevent crime, promote respect for the law, and to deter others likely to commit similar offenses, promote rehabilitation, address the individual needs of

14

the defendant, to reduce recidivism, and promote accountability for the offender and healing and restoration for the victim.

I've considered all of the factors that I'm to consider under the sentencing statute.

¶ 34 Thereafter, the court explained its decision to sentence Devoe to thirty-two years in the custody of the DOC by discussing at least four factors. First, the court acknowledged the defense's mitigation argument. The court stated that despite the adversities Devoe has faced, he has still chosen a life of crime — specifically noting that he has preyed on children and other drug users. Second, as to his criminal history, the court found that despite having multiple opportunities to be rehabilitated in connection with his nine felony convictions, Devoe has continued to reoffend. The court acknowledged that the prosecution "could have filed criminal habitual charges" but chose not to. Third, the court characterized Devoe's specific conviction as "selling drugs with guns." Finally, the court found that it needed to keep Devoe out of the community to "keep people safe from [him]."

¶ 35    With these factors in mind, the court sentenced Devoe to the maximum sentence permitted by the sentencing range with the special offender sentence enhancer.

### 3.    Analysis

¶ 36    Devoe argues that the trial court didn't consider all the sentencing factors and impermissibly focused on his lack of potential for rehabilitation. We disagree for two reasons.[1]

¶ 37    First, the record contradicts Devoe's assertion. The trial court began its sentencing decision by listing the factors it was required to consider and concluded, "I've considered all of the factors that I'm to consider under the sentencing statute." And the factors the court listed covered all the factors it was required to consider. *See Herrera*, ¶ 17.

¶ 38    Moreover, the court made detailed findings on several of the factors. "It is sufficient that the record contains evidence to support the reasons for the sentence, a reasonable explanation of the sentence imposed, and information that permits the conclusion that

---

[1] The parties disagree over whether the issue is preserved. Because we discern no error, we don't need to address whether the issue is preserved.

the sentencing court considered all essential factors." *Linares-Guzman*, 195 P.3d at 1137.

¶ 39     Regarding the nature of the crime, the court noted that the crime was selling drugs with guns.  The court's comments that Devoe preyed on children and drug users were also relevant to the nature of the crime.

¶ 40     Next, the court made findings on Devoe's rehabilitative potential.  The court found that Devoe had exhibited a lifelong pattern of preying on drug users and children — the latter a reference to Devoe's conviction for procurement of a child.  The court also found that Devoe had demonstrated a lack of rehabilitative potential based on his lifetime of selling drugs and pattern of reoffending.  The court even addressed the defense's mitigation by saying that an addiction to drugs didn't excuse the crimes Devoe had committed.

¶ 41     The court also expressly considered the last statutory factor, protection of the public.  It stated, "[T]he community needs you to go away forever," and "I want you to understand it's not so much to punish as just to keep people safe from you."

¶ 42    Therefore, the record demonstrates that the court considered all the relevant factors and made specific findings regarding all but one of them.  *See Linares-Guzman*, 195 P.3d at 1137 ("Trial courts are not required to 'engage in a point-by-point discussion of each and every one of [the sentencing] factors when it explains the sentence to be imposed.'" (quoting *People v. Walker*, 724 P.2d 666, 669 (Colo. 1986))).

¶ 43    Second, the trial court's decision to focus on Devoe's lack of rehabilitative potential wasn't an abuse of discretion.  To be sure, the trial court can't place undue emphasis on one sentencing factor to the exclusion of all the others.  *People v. Piro*, 701 P.2d 878, 879 (Colo. App. 1985).  But finding aggravating factors to be more compelling than any arguably mitigating factors doesn't constitute an abuse of discretion or indicate that the court failed to consider evidence of mitigation.  *Linares-Guzman*, 195 P.3d at 1137.

¶ 44    Here, the court stated that it had considered all appropriate factors.  Further, the court made detailed findings on nearly every sentencing factor — including Devoe's argued mitigating factors.  Accordingly, we discern no abuse of discretion in the court's decision to sentence Devoe to thirty-two years in prison.

## C. Proportionality

¶ 45    Finally, Devoe argues that his thirty-two-year sentence isn't proportional to his convictions and violates the Eighth Amendment's prohibition on cruel and unusual punishment. We aren't persuaded.

### 1. Standard of Review and Preservation

¶ 46    We review the constitutionality of a sentence de novo. *Wells-Yates v. People*, 2019 CO 90M, ¶ 35. An unpreserved claim that a sentence is unconstitutionally disproportionate is reviewed for plain error. *People v. Walker*, 2022 COA 15, ¶ 60. Plain error is one that is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. We only reverse for plain error if the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment." *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

¶ 47    As Devoe concedes, he didn't request a proportionality review from the trial court. Thus, the issue isn't preserved, and we will reverse only upon a finding of plain error.

## 2.    Relevant Law

¶ 48    The Eighth Amendment prohibits "sentences that are disproportionate to the crime committed." *Wells-Yates*, ¶ 5 (quoting *Solem v. Helm*, 463 U.S. 277, 284 (1983)). "It is 'exceedingly rare' for a sentence to be deemed so extreme that it is grossly disproportionate to the crime." *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Proportionality review is most commonly applied to cases where a defendant's sentence exceeds the presumptive sentencing range pursuant to the habitual criminal statute. *See generally id.* at ¶ 20; *Rutter v. People*, 2015 CO 71; *People v. Session*, 2020 COA 158.

¶ 49    Our proportionality review involves two steps: (1) an "abbreviated proportionality review"; and (2) an "extended proportionality review." *Wells-Yates*, ¶ 10. The abbreviated proportionality review compares the gravity or seriousness of the offense to the harshness of the penalty. *Id.* at ¶ 11.

¶ 50    Certain crimes have been deemed per se grave or serious, and for those offenses, courts may skip the first part of the abbreviated proportionality review. *Id.* at ¶ 13. For crimes that are not per se grave or serious, courts review "the facts and circumstances

20

underlying the offense." *People v. Hargrove*, 2013 COA 165, ¶ 12, *abrogated on other grounds by*, *Wells-Yates*, ¶¶ 16-17.

¶ 51 In assessing the gravity or seriousness of an offense, courts consider the harm caused or threatened to the victim or society and the culpability of the offender. *Wells-Yates*, ¶ 12. In terms of harm to the victim or society, courts should focus on the following factors: (1) the magnitude of the offense; (2) whether the offense was a lesser included or greater included offense; (3) whether the defendant was the principal or an accessory; and (4) whether the crime was completed or only attempted. *Id.*

¶ 52 Review of a sentence's harshness "is substantially circumscribed because the legislature's establishment of the harshness of the penalty deserves great deference." *Id.* at ¶ 62. "In assessing the harshness of the penalty, we must take into account both the length of the sentence and parole eligibility." *People v. Lopez*, 2025 COA 73, ¶ 12.

¶ 53 If the abbreviated proportionality review doesn't give rise to an inference of gross disproportionality, we need not conduct an extended proportionality review. *Wells-Yates*, ¶ 15.

## 3. Analysis

¶ 54    Devoe argues that his sentence was disproportionate because only two of his previous offenses were arguably per se grave or serious and the trial court failed to make the requisite findings that the remaining previous offenses were grave or serious. Devoe, however, erroneously frames his argument as though he was sentenced under a *habitual offender* statute — which requires the imposition of a maximum sentence. But because he was instead sentenced under a *special offender* statute, the trial court exercised its discretion to impose the sentence and in the course of doing so made specific findings regarding the propriety of the sentence based on all the attendant circumstances.

### a.    Habitual Offender Sentencing and Special Offender Sentencing

¶ 55    First, Devoe's argument misconstrues his sentence as having been imposed under a habitual offender statute. Under this apparent misapprehension, Devoe argues that his previous offenses aren't grave or serious, and thus, his sentence is disproportionate. To properly understand our proportionality review, we must understand exactly how Devoe was sentenced.

22

¶ 56 As previously stated, Devoe was convicted of possession with intent to distribute and a special offender sentence enhancer for committing the crime within immediate reach of a deadly weapon. The special offender statute elevates the underlying conviction from a level 2 drug felony to a level 1 drug felony, thus *changing* the presumptive sentencing range accordingly. § 18-18-407(1). This is distinct from how Colorado's habitual offender statute operates.

¶ 57 Under Colorado's habitual offender statute, a defendant convicted of a felony (a triggering offense) may be adjudicated a habitual criminal if he has two or more previous felony convictions (predicate offenses). § 18-1.3-801(1.5)(a), (2)(a)(I)(A), C.R.S. 2025. A conviction as a habitual offender with three or more felony convictions receives a mandatory sentence of four times the maximum of the presumptive sentencing range of the triggering offense. § 18-1.3-801(2)(a)(I)(A). "By increasing a defendant's punishment *based on mandatory provisions*, the habitual criminal statute 'strip[s] the sentencing court of any discretion in sentencing.'" *Wells-Yates*, ¶ 20 (emphasis added) (citation omitted). The only discretion exercised is when the prosecution decides whether to adjudicate the defendant a habitual criminal. *Id.*

¶ 58   Stated differently, the special offender statute subjects a defendant to a *different* presumptive sentencing range while still permitting the sentencing court to exercise its sentencing discretion.  In contrast, the habitual offender statute requires mandatory sentencing *outside* of the triggering offense's presumptive sentencing range.

¶ 59   Here, the maximum sentence Devoe could have received on the possession charge alone was eight years.  Had he been convicted as a habitual criminal with three or more previous felonies, the court would have been required to sentence Devoe to four times that maximum — resulting in a mandatory thirty-two-year sentence.  While the sentencing court ultimately imposed a thirty-two-year sentence, it wasn't *required* to do so by the special offender statute.  Instead, thirty-two years was the maximum sentence within the sentencing range for a level 1 drug felony.  This allowed the court to exercise its discretion, consider aggravating and mitigating factors, and conclude the maximum sentence was appropriate.

¶ 60   As we have previously concluded, the court properly considered the sentencing factors under the current sentencing

24

scheme. The court didn't make findings on Devoe's predicate offenses because it wasn't required to under the special offender sentencing scheme. Further, even if Devoe's sentence was submitted to a proportionality review, as discussed below, we conclude that the crime he committed was independently grave or serious, and thus Devoe was sentenced appropriately.

### b.   The Gravity of the Offense

¶ 61   In *Wells-Yates*, the Colorado Supreme Court held that, while possession with intent to distribute offenses are not grave or serious per se, oftentimes they can rise to that level based on the circumstances of the offense. *Id.* at ¶ 70. Weighing the factors laid out in *Wells-Yates*, we conclude the offense here is grave or serious.

¶ 62   First, we consider the magnitude of the offense. The amount of drugs involved is an important consideration when determining if a possession charge is grave or serious. *Id.* at ¶ 69. Devoe was found with a large quantity of drugs — 232 grams of cocaine. This is much more than what one might expect for personal use and thus strongly suggests that the offense was grave or serious. *See Harmelin*, 501 U.S. at 1002; *cf. Wells-Yates*, ¶ 71 (noting that "an addict found in possession of baggies, a scale, and a very small

quantity of narcotics" might not be engaged in a grave or serious crime).

¶ 63     Additionally, Devoe — who was unemployed at the time — had $5,100 in cash when he was arrested.  The large quantity of drugs and amount of cash combined with Devoe's unemployment suggest that Devoe had likely been selling the cocaine, even though he wasn't charged with distribution — which is a per se grave or serious offense.  *Wells-Yates*, ¶ 66.

¶ 64     Further, officers found two loaded handguns in different areas of the home.  Indeed, the jury found that Devoe had one of those guns within his immediate reach while possessing cocaine with intent to distribute.  For the foregoing reasons, we conclude that the magnitude of this specific crime suggests that the offense is grave or serious.

¶ 65     The next two *Wells-Yates* factors are straightforward.  The possession with intent to distribute offense wasn't a lesser included offense, and Devoe was the principal actor involved in the offense.  These factors also suggest the offense is grave or serious.

¶ 66     Finally, we look to whether the crime was completed or only attempted.  "Possession with intent requires less than the

completed (or even the attempted) sale, distribution, manufacture, or dispensation of narcotics; it requires simply an *intent* to sell, distribute, manufacture, or dispense narcotics." *Id.* at ¶ 72. While this is a compelling factor against designating Devoe's crime as grave or serious, it's outweighed by the other factors.

¶ 67    Considering all the factors together, we have no difficulty in concluding that Devoe's possession with intent to distribute conviction, and the accompanying special offender sentence enhancer, is a grave or serious offense.

### c.    The Harshness of the Penalty

¶ 68    Next, we consider whether the thirty-two-year sentence was unduly harsh. We conclude that it wasn't for at least two reasons.

¶ 69    First, "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" *Harmelin,* 501 U.S. at 998 (quoting *Rummel v. Estelle,* 445 U.S. 263, 275-76 (1980)). "Thus, '[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for

crimes.'" *Id.* at 999 (quoting *Solem*, 463 U.S. at 290). Devoe's thirty-two-year sentence is within the range permitted by statute.

¶ 70 Second, the thirty-two-year sentence is the maximum allowed by statute. Devoe, however, will be eligible for parole after serving no more than half of his sentence — sixteen years.[2] *See* § 17-22.5-403(1), C.R.S. 2025. While the maximum sentence may appear harsh on its face, Devoe's eligibility for parole "can reduce the actual period of confinement and render the penalty less harsh." *Wells-Yates*, ¶ 14.

¶ 71 Because Devoe's sentence falls within the range fixed by the legislature and he will be eligible for parole, we conclude that his sentence isn't unduly or unconstitutionally harsh.

¶ 72 Given that the circumstances of Devoe's possession with intent to distribute conviction are sufficient to render the crime grave and serious, and the sentence doesn't raise any inference of disproportionality, we don't discern any error by the trial court,

---

[2] Indeed, Devoe suggests in his opening brief that he will be parole eligible in October 2036, citing the DOC Inmate Locator information page. If Devoe is correct, then this would mean he is parole eligible after fourteen years instead of sixteen, further bolstering our determination that there is no inference of gross disproportionality.

much less a plain error, or find any basis for conducting an extended proportionality review. *See id.* at ¶ 15.

## III. Disposition

¶ 73    The judgment is affirmed.

JUDGE GROVE and JUDGE JOHNSON concur.